PEOPLE *v.* CHARLIE LEE WOODS.

CRIMINAL LAW—CONFESSIONS—ADMISSIBILITY—RETRIAL.

Rules established by Supreme Court of the United States governing the admissibility of confessions obtained during police interrogation, which rules were later held to be applicable only in cases commenced after June 13, 1966, do not apply in retrials of trials held before that date; thus, on retrial of defendant's 1961 trial on a charge of first-degree murder defendant's oral confession and evidence discovered as a result thereof are admissible despite failure of police to advise defendant of his right to assistance of counsel and right to remain silent (CL 1948, § 750.316).

Appeal from Court of Appeals, Division 2, Fitzgerald, P. J., and R. B. Burns and Holbrook, JJ., denying leave to appeal from Genesee, Newblatt (Stuart A.), J. Submitted February 4, 1969. (Calendar No. 6, Docket No. 52,071.) Decided August 4, 1969.

Charlie Lee Woods was convicted of first-degree murder. New trial granted. Motion to suppress evidence on retrial denied. Leave to appeal denied by Court of Appeals. Defendant appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTE

29 Am Jur 2d, Evidence §§ 555–557.
Admissibility of pretrial confession in criminal case—Supreme Court cases. 1 L Ed 2d 1735, 4 L Ed 2d 1833, 12 L Ed 2d 1340, 16 L Ed 2d 1294.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Donald A. Kuebler,* Assistant Prosecuting Attorney, for the people.

*Brownell, Gault & Andrews (Douglas M. Philpott,* of counsel), for defendant.

BLACK, J.    This appeal brings up a nationally bruited and quite unsettled question of criminal justice. The source of that question is what vexed lawyers and judges refer to as *Miranda* and *Johnson* (*Miranda* v. *Arizona,* 384 US 436 [86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974] ; and *Johnson* v. *New Jersey,* 384 US 719 [86 S Ct 1772, 16 L Ed 2d 882]; June 13 and June 20, 1966, respectively). The question, tersely put, is whether the rules laid down 5-3-1 in *Miranda* apply to this forthcoming retrial of a 1961 trial for and conviction of first-degree murder (CL 1948, § 750.316 [Stat Ann 1954 Rev § 28.548] ).

Not being disposed "to attempt to outrun the Supreme Court of the United States" (see ADAMS, J., in *In re Apportionment of State Legislature—1964,* 372 Mich 418, 473) by stretching *Miranda* beyond what we perceive is the precise command thereof, and having concluded since oral argument that the intervening provisions of presumptively constitutional section 3501 of the crime control act of June 19, 1968 (Public Law 90-351, 90th Congress, HR 5037 ; 18 USC § 3501, 36 US LW 109) will bring to the State courts ultimately concordant advices of the Supreme Court, we stand with Judge Newblatt and the assigned panel of the Court of Appeals for a negative answer to the stated question.

Charged with first-degree murder and jury tried June 13 through June 22, 1961, defendant Woods

was convicted as charged and sentenced to life imprisonment. Throughout the proceedings resulting in such conviction he was represented by court appointed counsel, the competence and integrity of whom is unquestioned. June 26, 1967, for reasons dissociated entirely from the question of admissibility—on retrial—of defendant's 1961 confession, an order for new trial entered in circuit. Preparing for new trial, the prosecuting attorney gave notice of intent to prove and introduce the confession. Newly appointed counsel for defendant moved to suppress for want of compliance with the requirements of *Miranda*. The successor judge denied the motion on ground that *Miranda* by *Johnson's* terms was not intended to apply to any case *commenced* before *Miranda's* decision was announced. The Court of Appeals affirmed May 29, 1968, citing *People* v. *Shaw* (1968), 9 Mich App 558.

The subordinate Federal courts and the courts of the States generally are in manifest conflict. For the most recent and thorough discussion thereof see *State* v. *Lewis* (1968), 274 NC 438 (164 SE2d 177); *People* v. *Worley* (1967), 37 Ill 2d 439 (227 NE2d 746); *People* v. *Sayers* (1968), 22 NY2d 571 (293 NYS2d 769, 240 NE2d 540) and "The Applicability of Miranda to Retrials," 116 U of Pa Law Rev, 316, of which more later along with specific reference to *Jenkins* v. *State* (1967), — Del — (230 A2d 262) and *Jenkins* v. *State* (1968), — Del — (240 A2d 146).

The Federal decisions furnish little or no reasoning,[1] the respective opinion writers seemingly having

---

[1] See comment, 116 U of Pa Law Rev, *supra* at 317, footnote 7:

"With the exception of *People* v. *Doherty* (1967), 67 Cal 2d 9 (429 P2d 177, 59 Cal Rptr 857), the cases holding *Miranda* applicable on retrial do so without discussion of the issue. In *Doherty* the California supreme court relied on a refutation of the contrary position, rather than an affirmative reasoning."

taken it for granted that "if this case must be re-tried, it is clear that *Miranda* must be applied." (Quotation from *Virgin Islands* v. *Lovell* [CA 3, 1967], 378 F2d 799, 802 n 4), whereas the most persuasively reasoned decisions of the courts of the States hold to the contrary. The author of the University of Pennsylvania Law Review commentary, *supra,* provides an appropriate introduction to scrutiny in depth (pp 324, 325):

"In the retrial situation, the police face a far more difficult task in attempting to compensate for the inadmissibility of the confession since the trial is further removed in time from the investigation. The unavailability of evidence may necessitate dismissals or acquittals, should *Miranda* be applied.

"The interest of society here cannot be dismissed easily. It might be argued that by virtue of the establishment of stricter standards in *Miranda,* the Court has balanced society's interest in protection and safety against an accused's constitutional privileges, and has chosen to run the risk that people who have committed crimes will avoid imprisonment. However, in the normal case where *Miranda* will govern, the police will have had prior notice of the constitutional requirements and will have the opportunity to gather the evidence necessary to convict the guilty. In the retrial situation, through their justifiable reliance on the admissibility of confessions, the police have foregone the opportunity to gather such evidence and society's interest cannot be protected. Thus, the *Miranda* balance does not necessarily control this situation."

We find that the author's conclusion[2] is quite in accord both with *Johnson* and *Stovall* v. *Denno*

---

[2] 116 U of Pa Law Rev, *supra* at 327:
"The rules of *Miranda* were promulgated in order to deter certain police conduct which tended to jeopardize the privileges of the accused. The rules also made explicit what behavior was required of police. It is now too late to deter the behavior of police with

(1967), 388 US 293 (87 S Ct 1967, 18 L Ed 2d 1199).
*Johnson* reads (384 US 719, 733):

"In the light of these additional considerations, we conclude that *Escobedo*[3] and *Miranda* should apply only to cases commenced after those decisions were announced."

*Stovall* echoed, just a year later (pp 300, 301):

"We also conclude that, for these purposes, no distinction is justified between convictions now final, as in the instant case, and convictions at various stages of trial and direct review. We regard the factors of reliance and burden on the administration of justice as entitled to such overriding significance as to make that distinction unsupportable."

For the convenience of Michigan judges and attorneys not having at ready hand the reports of *Lewis, Worley* and *Sayers,* we quote connectedly and with approval from each. *State* v. *Lewis* (1968), 274 NC 438 (164 SE2d 177, 185, 186):

"Consideration of these overruling decisions leaves the impression the Supreme Court of the United States has not spoken definitively on the precise question now under such consideration. Pending such decision, trial courts in this jurisdiction will be guided by our decision herein.

"In determining judicial policy, the opinion in *Stovall* states: 'The criteria guiding resolution of the question implicates (a) the purpose to be served by the new standards, (b) *the extent of the reliance by law enforcement authorities on the old standards,*

---

regard to the retrial defendant; if the police conduct fell below the standards announced in *Miranda,* the dignity of the individual has already suffered. Application of *Miranda* could prevent this injury from culminating in self-incrimination at trial. However, application of the voluntariness test could at least prevent this in most obvious cases of coercion. Consequently, the circumstances of the retrial situation make the use of the voluntariness test preferable to application of *Miranda* on retrial."

3.*Escobedo* v. *Illinois* (1964), 378 US 478 (84 S Ct 1758, 12 L Ed 2d 977).—REPORTER.

and (c) *the effect on the administration of justice of a retroactive application of the new standards.*' (Our italics.)   Obviously, law enforcement officers relied on the constitutional standards applicable at the time of the search and seizure, and at the time of the confession, and at the time of the lineup. The date the trial or retrial is commenced is unrelated to whether the law enforcement officers obtained the evidence according to constitutional standards upon which they reasonably placed reliance.   As stated by Justice Schaefer, of the supreme court of Illinois, in The Control of 'Sunbursts': Techniques of Prospective Overruling [22 Record of NYCBA 394,] 411: 'The earlier constitutional standards were relied upon, not at the moment that the trial commenced, but at the moment that the interrogation took place.'

"In our view, *Miranda* should not and does not apply to confessions obtained prior to that decision, when offered at trials or retrials beginning thereafter, where law enforcement officers relied upon and complied with constitutional standards applicable at the time the confessions were made.   We perceive a trend towards this conclusion in decisions of the Supreme Court of the United States discussed herein."

*People* v. *Worley* (1967), 37 Ill 2d 439, 446, 447:

"Since the language employed in the statement of the *Johnson* rule is inconclusive, in our opinion the intention of the court may best be found by examining the reasons for the rule.   The court listed three factors which entered into its decision: the purpose for announcing new standards in *Miranda,* the reliance placed upon the pre-*Miranda* rules, and the seriously disruptive effect on the administration of justice of a decision that *Miranda* apply retroactively.   Finding that the integrity of the fact-finding process is not as substantially improved by *Miranda* as it has been by others of its decisions, that the

pre-*Miranda* rules had been relied on by law enforce-ment officers to obtain confessions which are inad-missible in post-*Miranda* cases, and that making *Miranda* retroactive would seriously disrupt admin-istration of our criminal laws, the court decided against applying *Miranda* retroactively. While the disruptive effect upon our criminal laws would not be as great if we follow *Gibson* [v. *United States* (CA 5, 1966), 363 F2d 146] as it would have been if the Supreme Court had held that *Miranda* ap-plied retroactively, because retrials are not required in all pre-*Miranda* decisions in which confessions are involved, the presence of a disrupting effect similar to that with which the Court was concerned in *Johnson,* as well as a consistent thrust from each of the other two criteria, leads us to conclude that the Supreme Court did not intend that *Miranda* apply to retrials in cases such as the instant one. The pre-*Miranda* and pre-*Escobedo* rules making inadmissible coerced confessions, as well as *Esco-bedo,* were available to protect the integrity of the fact-finding process in defendant's case so that hold-ing *Miranda* applicable to his retrial would effect no significant improvement therein. Law enforce-ment officers placed identical reliance on the pre-*Miranda* rules to obtain confessions in all cases which commenced prior to June 13, 1966, and the fact that a retrial is ordered in some of these cases in no way alters this reliance.

"Our interpretation of the Supreme Court's intent in *Johnson* is reinforced by the fact that the Court there made *Miranda* applicable only to cases com-mencing subsequent to June 13, 1966, expressly ex-cluding those in which direct appeals were pending at the time *Miranda* was announced. This was in direct contrast to its action in *Linkletter* v. *Walker,* 381 US 618 (85 S Ct 1731, 14 L Ed 2d 601), in which the Court, while declining to apply *Mapp* v. *Ohio,* 367 US 643 (81 S Ct 1684, 6 L Ed 2d 1081), retro-actively, held it applicable to *all* cases in which the State court decision had not become *final* prior to

announcement of *Mapp.* Also of some significance is the statement in *Johnson* (384 US at 732 [86 S Ct at 1780, 16 L Ed 2d at 892]) that *'Future defendants* (emphasis ours) will benefit fully from our new standards governing in-custody interrogation, while past defendants may still avail themselves of the voluntariness test.' We therefore hold that *Miranda* is inapplicable to retrials in cases which were originally tried prior to June 13, 1966."

*People* v. *Sayers* (1968), 22 NY2d 571 (293 NYS2d 769, 772, 773, 240 NE2d 540, 542, 543):

"The Supreme Court in a decision which cannot be distinguished from *Johnson* did not apply the new standards to trials commenced after the date of the new decision but only to those trials in which the lineups had taken place after the decision requiring the presence of counsel. Indeed, the Court indicated that, when the basis of a nonretroactivity decision is the reliance by law enforcement officials on particular decisions of the Court, the crucial test in determining the point at which the new rule was to be applied was the point at which reliance had taken place. The Court cited with favor a lecture given by Mr. Justice Shaefer of the supreme court of Illinois, who was critical of the failure of the *Johnson* decision to recognize this factor. Mr. Justice Shaefer wrote (in a passage which was included within the citation in *Stovall, supra*):

" 'Again, however, in its determination [in *Johnson* v. *New Jersey, supra*] of the cutoff date for the application of new constitutional doctrines, the Court overlooked the factor of reliance. A police officer conducting an interrogation prior to *Miranda* could have complied fully with the then applicable constitutional standards but still have failed to comply with the newly added requirements. The earlier constitutional standards were relied upon, not at the moment that the trial commenced, but at the moment that the interrogation took place. *There*

*have been cases; and there will be more, in which
this distinction is critical.'* (Schaefer, The Control
of 'Sunbursts': Techniques of Prospective Over-
ruling, 22 Record of Association of Bar of City of
NY 394, 411 [emphasis added], cited in *Stovall* v.
*Denno, supra,* 388 US 293, 301, 87 S Ct 1967, 1972,
18 L Ed 2d 1199, 1206).

"There can be little question, in light of *Stovall,*
that, if *Johnson* v. *New Jersey* were decided today,
the standards adopted in *Miranda* v. *Arizona* would
have applied to govern the admissibility of only
those confessions obtained after the date of the deci-
sion. While we are bound to apply *Johnson* to
situations which the court specifically dealt with,
we should not apply it to situations such as this,
which were not considered in *Johnson.*"

Turning now to previously mentioned section 3501
of the crime control act of June 19, 1968. For the
entitlement, declarations of purpose and full text
of that section, see the appendix hereof. And for
the interpretive background of the act, see Senate
Report No 1097, 1968 US Code Congressional and
Administrative News, p 2112 *et seq.,* particularly
this heading and beginning paragraph (p 2123):

"TITLE II—ADMISSIBILITY OF CONFESSIONS, REVIEW-
ABILITY OF ADMISSIONS IN EVIDENCE OF CONFESSIONS
IN STATE CASES, ADMISSIBILITY IN EVIDENCE OF EYE-
WITNESS TESTIMONY, AND PROCEDURES FOR OBTAINING
WRITS OF HABEAS CORPUS.

"Federal aid to the States is not enough to suc-
cessfully combat the menace of crime. Much more
is necessary. No matter how much money is spent
for upgrading police departments, for modern equip-
ment, for research and other purposes encompassed
in title I, crime will not be effectively abated so long
as criminals who have voluntarily confessed their
crimes are released on mere technicalities. The
traditional right of the people to have their pros-
ecuting attorneys place in evidence before juries the

voluntary confessions and incriminating statements made by defendants simply must be restored. It is the purpose of title II to accomplish this and other related objectives."

Upon reading the "Declarations and Purpose" of the act, one would conclude naturally that the various ensuing sections were intended to apply in appropriate instances both in the courts of the States and the courts of the United States. However, a careful reading of section 3501 discloses that it applies only to criminal prosecutions brought by the United States or by the District of Columbia, thus leaving the States with none of the titularly declared aid, so far at least as section 3501 is concerned.

It is not for this Court of a State to decide whether section 3501 was a valid exercise of congressional power as claimed and denied in the respective senatorial briefs (1968 US Code Congressional and Administrative News, commencing at 1646 for the majority and at 1732 for the minority), or to consider whether by section 3501 Congress overreacted to *Miranda's* "invitation,"[4] or to deter-

---

4 The invitation was accepted as appears in the majority brief at page 1659. Quoting *Miranda*, the brief proceeds:

"Consequently, the committee feels that Congress through its power to prescribe rules of evidence in Federal courts, should respond to the majority opinion's invitation to Congress, wherein the Court says:

" 'It is impossible for us to foresee the potential alternatives for protecting the privilege which might be devised by Congress or the States in the exercise of their creative rule-making capacities. Therefore we cannot say that the Constitution necessarily requires adherence to any particular solution for the inherent compulsions of the interrogation process as it is presently conducted. Our decision in no way creates a constitutional straitjacket which will handicap sound efforts at reform, nor is it intended to have this effect. We encourage Congress and the States to continue their laudable search for increasingly effective ways of protecting the rights of the individual while promoting efficient enforcement of our criminal laws' (*Miranda* v. *Arizona* (1966), 384 US 436, 467 [86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974])."

mine whether section 3501 in some way modifies the application, in the courts of the States, of *Miranda's* rules and guidelines. We refer to the act, and to section 3501 in particular, only as an integral part of a yet unresolved Federal puzzle of national judicial concern. That puzzle is whether, upon and after the effective date of the act of June 19, 1968, there has been and is to be a more rigorous restriction of evidentiary use in the State courts of an accused's confession, than obtains when a criminal prosecution is "brought by the United States or by the District of Columbia." The question is bound to arise, however obliquely, when *Jenkins* v. *Delaware,* No 748, certiorari granted November 18, 1968, 393 US 950 (89 S Ct 380, 21 L Ed 2d 361), to review *Jenkins* v. *State* (1967), — Del — (230 A2d 262), comes to submission in the Supreme Court of the United States.

In *Jenkins* v. *State* (1968), — Del — (240 A2d 146), the supreme court of Delaware adhered, on retrial of *Jenkins,* to its previous ruling:

"For record purposes, the defendant renews his contention that the rules of *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694), were applicable to the retrial.

"We held against that contention in our earlier decision (230 A2d 262, 274–276). Since then, the same conclusion has been reached by the supreme court of New Jersey in *State* v. *Vigliano* (1967), 50 NJ 51 (232 A2d 129), and by the Maryland court of special appeals in *Boone* v. *State* (1968), 3 Md App 11 (237 A2d 787), among others. We adhere to our earlier ruling on this point."

We align our judgment with those of the State courts which view *Miranda* as applying only to prosecutions commenced after *Miranda* became pro-

spectively effective.  The judgment of the Court of Appeals is therefore affirmed.[5]

T. E. BRENNAN, C. J., and DETHMERS, KELLY, T. M. KAVANAGH, ADAMS, and T. G. KAVANAGH, JJ., concurred.

ADDENDUM (June 5, 1969):

As shown by footnote 5 *ante*, the foregoing opinion was delivered to the other Justices for their consideration on February 14 last.  No other opinion of the defendant's appeal has since been written. Now that the Supreme Court has decided *Jenkins* v. *Delaware* (1969), No 748, 395 US 213 (89 S Ct 1677, 23 L Ed 2d 253), (the pendency of which we noted above at 138), by ruling as we have ruled that *Miranda* does not apply to the retrial of a defendant whose first trial commenced prior to June 13, 1966,[6] there is no need for withholding any longer a report of our decision.

## APPENDIX.

(Entitlement, including "Declarations and Purpose," and complete "Title II" including § 3501 "Admissibility of Confessions," of Public Law 90–351, 90th Congress, HR 5037, June 19, 1968.[7])

"An act to assist State and local governments in reducing the incidence of crime, to increase the effectiveness, fairness, and coordination of law enforcement and criminal justice systems at all levels of government, and for other purposes.

"Be it enacted by the Senate and House of Representatives of the United States of America in Con-

[5] With the defendant languishing in prison and due in all probability to be freed should *Miranda* be held applicable upon his retrial, the foregoing opinion has been prepared to exclusion of other work.  It is turned over to fellow Justices for their early consideration this 14th day of February, 1969.

[6] June 2, 1969, 37 LW 4458, 4460.

[7] For amendment changing *commissioner* to *magistrate*, see Public Law 90–578, 90th Congress, § 945, § 301, subd (3), October 17, 1968.—REPORTER.

gress assembled, That this act may be cited as the 'omnibus crime control and safe streets act of 1968'.

## "TITLE I—LAW ENFORCEMENT ASSISTANCE.

### "Declarations and Purpose

"Congress finds that the high incidence of crime in the United States threatens the peace, security, and general welfare of the nation and its citizens. To prevent crime and to insure the greater safety of the people, law enforcement efforts must be better coordinated, intensified, and made more effective at all levels of government.

"Congress finds further that crime is essentially a local problem that must be dealt with by State and local governments if it is to be controlled effectively.

"It is therefore the declared policy of the Congress to assist State and local governments in strengthening and improving law enforcement at every level by national assistance. It is the purpose of this title to (1) encourage States and units of general local government to prepare and adopt comprehensive plans based upon their evaluation of State and local problems of law enforcement; (2) authorize grants to States and units of local government in order to improve and strengthen law enforcement; and (3) encourage research and development directed toward the improvement of law enforcement and the development of new methods for the prevention and reduction of .crime and the detection and apprehension of criminals.  *  *  *

"TITLE II—ADMISSIBILITY OF CONFESSIONS, REVIEWABILITY OF ADMISSION IN EVIDENCE OF CONFESSIONS IN STATE CASES, ADMISSIBILITY IN EVIDENCE OF EYEWITNESS TESTIMONY, AND PROCEDURES IN OBTAINING WRITS OF HABEAS CORPUS.

"Sec. 701. (a) Chapter 223, title 18, United States Code (relating to witnesses and evidence), is amended by adding at the end thereof the following new sections:

" '§ 3501. *Admissibility of confessions.*

" '(a) In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

" '(b) The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

" 'The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

" '(c) In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other

detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a *magistrate* or other officer empowered to commit persons charged with offenses against the laws of the United States or of the District of Columbia if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: *Provided,* That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such *magistrate* or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such *magistrate* or other officer.

" '(d) Nothing contained in this section shall bar the admission in evidence of any confession made or given voluntarily by any person to any other person without interrogation by anyone, or at any time at which the person who made or gave such confession was not under arrest or other detention.

" '(e) As used in this section, the term "confession" means any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing.

" '§ 3502. *Admissibility in evidence of eye witness testimony.*

" 'The testimony of a witness that he saw the accused commit or participate in the commission of the crime for which the accused is being tried shall be admissible in evidence in a criminal prosecution in any trial court ordained and established under article III of the Constitution of the United States.'

"(b) The section analysis of that chapter is amended by adding at the end thereof the following new items:

" '3501. Admissibility of confessions.
" '3502. Admissibility in evidence of eye witness
testimony.' "