PEOPLE *v.* TOWNSEND

1. CRIMINAL LAW—CONSTITUTIONAL LAW—POLICE INTERROGATION—
WAIVER OF COUNSEL—ORAL STATEMENT.
Contentions of defendant who was convicted of second-degree
murder that he did not effectively waive his right to have
counsel present during police custodial interrogations and that
the trial court committed reversible error by admitting his
oral statement "that he did not know anything about killing
a woman" which was made before he was informed of the sex
of the victim *held*, without merit, where the record supports
the trial court's findings that the defendant was properly
advised of his constitutional rights and that he freely, voluntarily and understandingly waived them before making the
utterance (CL 1948, § 750.317).

2. CRIMINAL LAW—CONSTITUTIONAL LAW—POLICE INTERROGATION—
WAIVER OF COUNSEL—ORAL STATEMENT.
Defendant who made an incriminating oral statement to detectives during custody and after being informed of his right to

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law §§ 313, 316, 317.
Accused's right to counsel under the Federal Constitution Supreme
Court Cases.  18 L Ed 2d 1420, 1433 § 8.
Necessity of informing suspect of rights under privilege against
self-incrimination, prior to police interrogation.   10 ALR3d
1054.
Scope and extent and remedy or sanctions for infringement of
accused's right to communicate with his attorney.  5 ALR3d
1360.
[3]  5 Am Jur 2d, Appeal and Error § 704.
[4]  53 Am Jur, Trials § 1123.

remain silent and have appointed counsel *held,* to have waived his constitutional rights freely, voluntarily, and understandingly where he refused to sign a form telling him of his rights, but said that he would answer any questions although he did not want an attorney unless he was able to talk to his mother, and when offered the use of a telephone he refused to call her, but said again that he would answer any questions.

3. Appeal and Error—Findings of Fact—Witnesses.

Findings of fact are not set aside on appeal unless clearly erroneous and regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses who appeared before it (GCR 1963, 517.1).

4. Witnesses—Weight of Testimony.

A trial judge, in assessing the testimony of two witnesses, may properly give more weight to the testimony of the witness who is definite and unequivocal.

Appeal from Jackson, Gordon W. Britten, J. Submitted Division 2 April 14, 1969, at Lansing. (Docket No. 5,904.) Decided April 23, 1969. Leave to appeal denied December 17, 1969. See 383 Mich 752.

Robert Earl Townsend was convicted of second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Bruce A. Barton,* Prosecuting Attorney, and *Paul R. Adams,* Assistant Prosecuting Attorney, for the people.

*Howard W. Patch,* for defendant on appeal.

BEFORE: McGregor, P. J., and R. B. Burns and Danhof, JJ.

Danhof, J. On June 6, 1968 defendant was found guilty by a jury of having committed murder in the second degree, CL 1948, § 750.317 (Stat Ann 1954

Rev § 28.549) and was sentenced to life imprisonment.

Defendant's formal education terminated while in the ninth grade; he was 18 years of age at the time of his arrest, and had previously been given an undesirable discharge from the military service.

He appeals, questioning whether he effectively waived his right to have counsel present during police custodial interrogations.

A *Walker* hearing[1] was held on May 23, 1968 and after extensive testimony, the judge found:

"Well, based upon the evidence presented to the court, the court makes a finding that the defendant herein, Robert Earl Townsend, was advised of his constitutional rights as set forth in the *Miranda Case*. And that after being so advised, he freely, voluntarily and understandingly waived his rights in any admissions that came thereafter would be admissible in evidence."

Findings of fact are not set aside on appeal unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses who appeared before it. GCR 1963, 517.1; *People* v. *Walker* (1967), 6 Mich App 600.

According to testimony presented at the *Walker* hearing, detectives Utz and O'Shaughnessy of the Jackson city police department arrested defendant at approximately 11:30 p.m., December 13, 1967, at a tavern, and immediately transported him *via* car to the police station. O'Shaughnessy testified that while inside the bar he advised defendant

"of his constitutional rights, that he did not have to say anything, anything he said could be used

[1] *People* v. *Walker* (On Rehearing) (1965), 374 Mich 331; *People* v. *Walker* (1967), 6 Mich App 600.

against him; if he could not afford an attorney, an attorney would be supplied by the county, and that did he want an attorney present."

He testified further that defendant

"advised me that he did not know anything of the matter; that he would be willing to go to the police station with us, and answer any questions concerning this matter."

Relative to what happened *en route* to the station, O'Shaughnessy testified that

"Mr. Townsend offered explanations as to where he was tonight. We advised him to be quiet, that we did not wish to question him at this time, and he remained silent."

O'Shaughnessy testified further that on arrival at the station defendant

"was taken to the detective bureau, and seated at a desk. At this time he was offered Form A, otherwise known as Recognition of Rights Form, the rights form was read to him. He again read it. I asked him if he understood such form, he advised me that he did. I asked him if he wanted an attorney present during any questioning. He stated that he did not at this time, unless he was able to talk to his mother."[2]

---

[2] Form A provided: "I understand that I have a right to remain silent, that I need not talk to anyone, and I do not have to answer any questions that I might be asked.

"I also understand that any statements that I might make or any answers that I might give to questions may be used against me in court.

"I further understand that I may speak with an attorney or anyone else of my own choice at any time, and that I have a right to have an attorney present before I answer any questions, or make any statement; and I further understand that if I cannot afford an attorney, the court will appoint one for me, who I may talk with before I answer any questions or make any statements.

"I understand and recognize that these are my rights; I have an opportunity to use the telephone; and I now desire to answer any

Counsel then asked, "What happened then, please?"

O'Shaughnessy replied,

"I asked him if he would sign such a form, and he said no, he would not sign it. He would answer any questions, but he would not sign it until he contacted his mother. We offered a telephone to him to call his mother, and he stated that it was too late in the morning [*sic*], that he would wait until morning to call her."

Counsel then asked, "What did he say about answering questions again, please?"

O'Shaughnessy replied,

"That he would gladly answer any questions as he did not know anything about this matter."

Counsel continued, "Was he then asked any questions?"

O'Shaughnessy replied,

"No sir."

This was the critical moment in the proceedings. It is defendant's contention that he did not waive his right to counsel at this time. Subsequently, defendant was taken to a State police post where a breath analyzer test was administered. O'Shaughnessy testified that on the return trip defendant volunteered, "that he did not know anything about killing a woman." It is this statement that defendant claims was extremely prejudicial testimony to the accused's case since it was made before the accused was informed of the sex of the homicide victim. It is the further contention of the defend-

questions or to make a statement; I understand that at any time I may decide not to give further information or answer further questions."

ant that the trial court committed reversible error in allowing such testimony to be admitted.

Defendant relies heavily on the landmark case of *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974). Excerpts from that case which have particular relevance to the instant case follow:

"Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain

from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned. * * *

"An individual need not make a pre-interrogation request for a lawyer. While such request affirmatively secures his right to have one, his failure to ask for a lawyer does not constitute a waiver. No effective waiver of the right to counsel during interrogation can be recognized unless specifically made after the warnings we here delineate have been given. The accused who does not know his rights and therefore does not make a request may be the person who most needs counsel. * * *

"Accordingly we hold that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation under the system for protecting the privilege we delineate today. As with the warnings of the right to remain silent and that anything stated can be used in evidence against him, this warning is an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead. Only through such a warning is there ascertainable assurance that the accused was aware of this right. * * *

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. * * *

"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. *Escobedo* v. *Illinois* (1964), 378 US 478, 490 (84 S Ct 1758, 1765; 12 L Ed 2d 977, 986) note 14. This Court has always set

high standards of proof for the waiver of constitutional rights, *Johnson* v. *Zerbst* (1938), 304 US 458 (58 S Ct 1019, 82 L Ed 1461, 146 ALR 357), and we re-assert these standards as applied to in-custody interrogation.    Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders.

"An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver.    But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained."

Relying on the *Miranda Case, supra,* defendant contends that all police interrogation should properly have ceased when he expressed the desire to telephone his mother.    However, this Court views defendant's request to speak to his mother as a condition precedent to his wanting an attorney present during any questioning.    Additionally, when the police offered to meet this condition by offering defendant a telephone to call his mother he declined stating that it was too late to call her, but he would gladly answer any questions.    Only after defendant talked to his mother on the telephone at approximately 2:45 a.m. and she said, "have the court appoint one, because I don't have the money," did he say he would like to have an attorney present.    Even after talking with his mother defendant did not immediately ask for counsel.    The assistant prosecutor had to ask him three times if he would like an attorney before he finally answered yes.

It is clear that this case does not involve threats, coercion, duress, or compulsion, but only whether

defendant effectively and properly waived his right to have counsel present during police custodial interrogations.

The Arkansas Supreme Court in *Sossamon* v. *State* (1968), 245 Ark 302 (432 SW2d 469) held that where the defendant was advised of his constitutional rights under the *Miranda* decision it was not necessary to repeat the *Miranda* warnings prior to taking a written statement from the defendant on the following morning; that being a continuation of the experience of the previous day.

The United States Court of Appeals in *United States* v. *Vanterpool* (CA2, 1968), 394 F2d 697 said:

"However, the words of *Miranda* do not constitute a ritualistic formula which must be repeated without variation in order to be effective. Words which convey the substance of the warning along with the required information are sufficient."

The court then went on to hold that defendant had been adequately informed of his right to have counsel present during police custodial questioning even though the questioning took place before the *Miranda* decision was handed down and the exact words of *Miranda* were not used; and, further that defendant had indicated a willingness to proceed without counsel.[3]

From the transcripts in the instant case it is apparent that detectives Utz and O'Shaughnessy were aware of the holding in the *Miranda Case, supra,* and of the requirements and guides set forth therein.

There were discrepancies between the testimony of the two detectives who arrested defendant. The variations in detective Utz's testimony were of such

---

[3] The *Miranda* rules applied in the *Vanterpool Case, supra,* because the trial began after *Miranda* had been decided. *Johnson* v. *New Jersey* (1966), 384 US 719 (86 S Ct 1772, 16 L Ed 2d 882).

a nature as to be entirely consistent with a faulty memory. Indeed, the transcript of the *Walker* hearing contains many statements by Utz that his memory was faulty as to some aspects of what happened on the night in question. At times he referred to a police report in an attempt to refresh his recollection.

However, O'Shaughnessy was very definite in his testimony. Even defense counsel said in referring to O'Shaughnessy's testimony,

"Well, your Honor, he's been so very definite about the informing of the defendant of his constitutional rights, and has been very strong and certain in his testimony that he told them about—and the whole bit, that I think that this is a very important issue, and in fact the issue squarely before the court today, and I should be allowed latitude in cross examination to see how clearly he is on other things that happened that night."

It was entirely proper for the judge in assessing the testimony of the two detectives to give more weight to the definite, unequivocal testimony of detective O'Shaughnessy.

Therefore, it is our opinion that the record supports the finding of the trial court that the defendant was advised of his constitutional rights as required by *Miranda* v. *Arizona, supra,* and that he freely, voluntarily and understandingly waived them.

Affirmed.

All concurred.