## PEOPLE v. LASLEY
### Opinion of the Court

1. Criminal Law—Evidence—Witnesses—Leading Questions—Discretion.

   A witness may be asked leading questions within the discretion of the trial court (MCLA § 768.24).

2. Criminal Law—Evidence—Witnesses—Leading Questions—Use.

   Permitting prosecuting attorney to use leading questions during an evidentiary hearing examination of a detective who had interrogated defendant while he was in custody for breaking and entering was not reversible error (MCLA § 768.24).

3. Criminal Law—Extrajudicial Statement—Admissibility—Appeal and Error.

   A finding that defendant's extrajudicial statement, made during in-custody interrogation, was voluntary and admissible will not be disturbed upon appeal unless that finding is clearly erroneous where the record discloses that defendant was effectively advised of his right to have appointed counsel present during his custodial interrogation.

4. Criminal Law—Evidence—Evidentiary Hearing—Extrajudicial Statement—Admissibility.

   Admission of defendant's in-custody statement was not error, even assuming that Federal standards for interrogating suspects in custody were not met, where the only effect of the

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Witnesses § 570.
[2] 58 Am Jur, Witnesses § 569.
[3, 4] 21 Am Jur 2d, Criminal Law § 368.
[5] 21 Am Jur 2d, Criminal Law § 317.
[6] 58 Am Jur, Witnesses § 568 et seq.
[7] 21 Am Jur 2d, Criminal Law §§ 316, 317, 446.
[8] 29 Am Jur 2d, Evidence §§ 555–557.
[9] 29 Am Jur 2d, Evidence §§ 529, 531, 537, 542–554, 582.

statement was to place him at the scene of the breaking and entering of a gas station and he was apprehended there (MCLA § 750.110).

DISSENTING OPINION

BRONSON, J.

5. CRIMINAL LAW—CONSTITUTIONAL LAW—RIGHT TO COUNSEL.

*Warning given to defendant before interrogation that "if he should require an attorney, that if the matter was taken into court, the court would appoint one for him, if it saw fit," did not comply with the Federal requirement that a suspect must be advised of his constitutional right to legal counsel because the import of that statement to defendant was that he had conditional right to appointed counsel.*

6. CRIMINAL LAW—EVIDENCE—WITNESSES—LEADING QUESTIONS—PROPRIETY.

*A question designed to obtain a witness' acquiescence in a false suggestion is improper, even though leading questions in criminal cases may be permitted (MCLA § 768.24).*

7. CRIMINAL LAW—CONSTITUTIONAL LAW—IN-CUSTODY INTERROGATION—RIGHT TO COUNSEL.

*A suspect does not waive his right to counsel when he answers some questions or gives some information on his own before invoking his right to remain silent when interrogated.*

8. CRIMINAL LAW—NEW TRIAL—EVIDENCE—CONFESSION—ADMISSIBILITY.

*Admission of defendant's in-custody confession, made while he was without counsel, which clearly placed him at the scene of the breaking and entering with which he was charged, was reversible error even though a policeman had testified earlier to substantially the same evidence where there could be no reasonable doubt of the effect on the jury of defendant's own confirming testimony.*

9. CRIMINAL LAW—EVIDENCE—INVOLUNTARY CONFESSION—ADMISSIBILITY—ERROR.

*Introduction of an involuntary confession is never harmless error.*

Appeal from Genesee, Anthony J. Mansour, J. Submitted Division 2 October 8, 1969, at Lansing. (Docket No. 5,658.) Decided February 3, 1970. Leave to appeal granted, decision of the Court of

Appeals reversed, and remanded for new trial with directions on June 9, 1970. 383 Mich 787.

Larry Lasley was convicted by a jury of breaking and entering. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, *Donald A. Kuebler,* Chief Appellate Attorney, and *Roger W. Kittendorf,* Assistant Prosecuting Attorney, for the people.

*Carl L. Bekofske,* for defendant on appeal.

Before: QUINN, P. J., and BRONSON and T. M. BURNS, JJ.

QUINN, P. J. Defendant's jury trial resulted in his conviction of breaking and entering. MCLA § 750.110 (Stat Ann 1962 Rev § 28.305). He was sentenced and he appeals.

In the early morning hours of August 16, 1967, a police officer responding to a request that he investigate at a gasoline station entered the station. There he discovered defendant crouched down behind an overturned cigarette machine. Defendant was then handcuffed, searched and taken to the police station where he was interrogated. At this interrogation, defendant admitted being present at the gas station.

On appeal, defendant contends reversible error was committed at a *Walker*-type* hearing when the prosecuting attorney was permitted to use leading questions during the interrogation of the investigating detective. Under MCLA § 768.24 (Stat Ann 1954 Rev § 28.1047) and *People v. George Johnson* (1966), 5 Mich App 257, the record does not support this contention.

---

* *People* v. *Walker* (On Rehearing, 1965), 374 Mich 331.

Defendant further contends that his statement during in-custody interrogation, which gave rise to the *Walker*-type hearing, was inadmissible because the record does not disclose that defendant was effectively advised of his right to have appointed counsel present during custodial interrogation. *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974).

At the conclusion of the *Walker*-type hearing, the trial judge found that the statement was voluntary and admissible. We do not disturb such a finding unless it was clearly erroneous. *People* v. *Walker* (1967), 6 Mich App 600. Here, the record amply supports the trial court, and also discloses that defendant was effectively advised of his right to have appointed counsel present during custodial interrogation. *People* v. *Townsend* (1969), 17 Mich App 267.

In addition, and assuming *arguendo* that the standards of *Miranda, supra,* were not met, we can find no reversible error in the admission of defendant's statement. *Harrington* v. *California* (1969), 395 US 250 (89 S Ct 1726, 23 L Ed 2d 284). The only effect of the statement was to place defendant at the scene of the crime, and he was apprehended at the scene of the crime.

Affirmed.


T. M. BURNS, J., concurred.


BRONSON, J. (*dissenting*). Defendant, Larry Lasley, was tried before a jury in the Genesee County Circuit Court and convicted of the crime of breaking and entering. CL 1948, § 750.110 (Stat Ann 1962 Rev § 28.305).

In the early morning hours of August 16, 1967, police officer John Eddy, responding to a request

that he investigate at a gasoline station, entered the station building. There he discovered defendant crouched down behind an overturned cigarette machine. Defendant was then handcuffed, searched, and taken to the police station where he was interrogated. At this interrogation defendant admitted being present at the gas station. A *Walker*-type[1] hearing was held to determine the admissibility of defendant's statement. The statement was found to have been voluntary and in accordance with the requirements set down by the United States Supreme Court in *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974), *reh. den.* 385 US 890 (87 S Ct 11, 17 L Ed 2d 121).

In appealing his conviction, defendant asserts that his confession was involuntary and inadmissible at trial because he was not advised of his right to appointed counsel as required by the rule of *Miranda* v. *Arizona, supra.*

The transcript of the *Walker* hearing held before trial to determine the voluntariness of defendant's written statement discloses the following pertinent facts: on August 16, 1967, the defendant was taken to the offices of the detective bureau of the Flint police department at 1:25 a. m. At that time defendant was placed in a room with detective Don Hatchew and informed of his rights in the following manner:

"(*Detective Hatchew on direct examination*)

"*A.* When I first went into the room with Mr. Lasley I identified myself to him as a police officer and I told him my name. I then advised him of certain rights that he had relative to this matter. I advised him that he had the right to remain silent—

---

[1] *People* v. *Walker* (On Rehearing, 1965), 374 Mich 331.

"*Q.* What was his response after you asked him if he understood that?

"*A.* He said that he did understand that.

"*Q.* Then what, what was the next question?

"*A.* I also advised him that anything he did tell me could be used against him in court. And I asked him if he understood this and he said yes, that he did. I told him that he had the right to have an attorney present at the time that we discussed this matter, if he did wish to discuss it. And I asked him if he understood this and he said yes. I then asked him if he wanted to contact an attorney and he said no, that he didn't. And lastly, I advised him that if the—*if he should require an attorney, that if the matter was taken into court, the court would appoint one for him, if it saw fit, and that it would be of no cost to himself.*" (Emphasis added.)

The import of this statement is that there existed a conditional right to appointed counsel, *i.e.,* "if the matter was taken into court" and "if [the court] saw fit."

The testimony then continued as follows:

"*Q.* Did—

"*A.* He would be represented by a proper counsel.

"*Q.* Did you tell him that this court-appointed attorney—

"*Mr. Ring:* Objection, your Honor, to the leading questions of the prosecution.

"*The Court:* Well, there's no jury here, I think perhaps we can expedite it. Unless, of course, the leading questions get to the point where they're suggesting things to the witness' recollection, I'm not going to bar leading questions.

"*Q.* (*by Mr. Leiter, continuing*): Did you discuss with him the fact that if he couldn't afford an attorney, one could be appointed for him, and that attorney could be present during any questioning?

"*A.* Yes. Actually what I told him, as I tell everyone that comes in, if he doesn't have sufficient funds for an attorney, one would be appointed for him and that one would be available whenever he desired.

"*Q.* Did you then ask him if he wanted to talk about—

"*Mr. Ring:* Objection, your Honor, about the leading questions.

"*Q.* (*by Mr. Leiter, continuing*): Let me ask then this: well, simply, what was the next statement made either by you or by the respondent?

"*A.* He said—I asked him if he understood this and he said yes. Relative to the attorney. And I asked him if he wanted to discuss this particular charge that I had advised him of, of breaking and entering, and he says okay. I asked him what he was doing in this gas station and how he came to be there. He said that he was walking by the front of the gas station; that the front door was standing open."

At the conclusion of the *Walker* hearing, the lower court found defendant's statement to have been voluntarily given and therefore admissible in evidence at trial. The statement was admitted.

The substance of defendant's contentions are (1) that part of the detective's testimony was merely the response to the prosecutor's improper leading questions and must be discounted, and (2) that the detective's testimony failed to establish that the defendant was effectively and correctly advised of his right to appointed counsel.

In *Miranda* v. *Arizona* (1966), 384 US 436, 468–473 (86 S Ct 1602, 1625–1627, 16 L Ed 2d 694, 720–723), the Supreme Court states, in part:

"The Fifth Amendment privilege is so fundamental to our system of constitutional rule and the expedient of giving an adequate warning as to the

availability of the privilege so simple, we will not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given.

\*     \*     \*

"Thus, the need for counsel to protect the Fifth Amendment privilege comprehends not merely a right to consult with counsel prior to questioning, but also to have counsel present during any questioning if the defendant so desires.

\*     \*     \*

"Accordingly we hold that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation under the system for protecting the privilege we delineate today. As with the warnings of the right to remain silent and that anything stated can be used in evidence against him, this warning is an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead. Only through such a warning is there ascertainable assurance that the accused was aware of this right.

\*     \*     \*

"In order fully to apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him. Without this additional warning, the admonition of the right to consult with counsel would often be understood as meaning only that he can consult with a lawyer if he has one or has the funds to obtain one. The warning of a right to counsel would be hollow if not couched in terms that would convey to the indigent—the person most often subjected to interrogation—the knowledge that he too has a right to have counsel present. As with the warnings of

the right to remain silent and of the general right
to counsel, only by effective and express explanation
to the indigent of this right can there be assurance
that he was truly in a position to exercise it."

Clearly, the testimony of the detective *elicited by
the prosecutor's leading question* demonstrates sub-
stantial compliance with *Miranda*.    However, the
*previous testimony of the detective* just as clearly
demonstrates lack of compliance with *Miranda*.

The threshold question then becomes whether the
leading question was improper.    While Michigan
law (CL 1948, § 768.24 [Stat Ann 1954 Rev § 28-
.1047]) allows leading questions in criminal cases,
it is hornbook law that a question designed to obtain
the witness' acquiescence in a false suggestion is
improper.  The line of questioning in this case raises
doubts as to the exact nature of the warnings given
defendant.    Further, the record does not contain
positive evidence that the defendant knowingly
waived his right to counsel.    Again referring to
*Miranda,* we find the following statement at p 475:

"If the interrogation continues without the
presence of an attorney and a statement is taken,
a heavy burden rests on the government to demon-
strate that the defendant knowingly and intelligently
waived his privilege against self-incrimination and
his right to retained or appointed counsel. *Escobedo*
v. *Illinois* (1964), 378 US 478, 490, note 14 (84 S Ct
1758, 12 L Ed 2d 977, 986).  This Court has always
set high standards of proof for the waiver of con-
stitutional rights, *Johnson* v. *Zerbst* (1938), 304 US
458 (58 S Ct 1019, 82 L Ed 1461, 146 ALR 357),
and we re-assert these standards as applied to in-
custody interrogation.    Since the State is respon-
sible for establishing the isolated circumstances
under which the interrogation takes place and has
the only means of making available corroborated
evidence of warnings given during incommunicado

interrogation, the burden is rightly on its shoulders."

A final quotation from *Miranda* disposes of plaintiff's final contention that defendant knew he had a right to counsel since he abruptly terminated the interrogation, asking to seek counsel "in the morning".

"Moreover, where in-custody interrogation is involved, there is no room for the contention that the privilege is waived if the individual answers some questions or gives some information on his own prior to invoking his right to remain silent when interrogated." 384 US, at pp 475, 476.

Thus, the testimony must be interpreted as demonstrating a lack of compliance with the *Miranda* rules.

Defendant's confession, although abbreviated due to his termination of the interrogation, clearly placed him at the scene of the crime:

"*Q.* Then what if anything did he say to you?

"*A.* Mr. Lasley said that he was walking by the station, the Holley Gulf Station, and he saw the front door open and he walked inside. He said that there was another man inside the building. I asked him that if—whether or not he had bent down near this cigarette machine, which was located inside the station. At that time Mr. Lasley stated that he didn't wish to answer that question and didn't want to discuss this any more with me. And the inter—or the questioning was terminated at approximately 1:30."

Although a policeman earlier had testified to substantially the same evidence, there can be no reasonable doubt of the effect on the jury of the defendant's own confirming testimony.

Plaintiff claims the standard of review should be whether a miscarriage of justice has occurred. In

support of this theory plaintiff cites CL 1948, § 769-
.26 (Stat Ann 1954 Rev § 28.1096). However, in the
recent case of *Chapman* v. *California* (1967), 386
US 18 (87 S Ct 824, 17 L Ed 2d 705), *reh. den.* 386
US 987 (87 S Ct 1283, 18 L Ed 2d 241), the Supreme
Court construed the California statute similar to our
own:

"The California constitutional rule emphasizes 'a
miscarriage of justice,' but the California courts
have neutralized this to some extent by emphasis,
and perhaps overemphasis, upon the court's view of
'overwhelming evidence.' We prefer the approach
of this Court in deciding what was harmless error
in our recent case of *Fahy* v. *Connecticut* (1963), 375
US 85 (84 S Ct 229, 11 L Ed 2d 171). There we
said: 'The question is whether there is a reason-
able possibility that the evidence complained of
might have contributed to the conviction.' 375 US,
at pp 86, 87 (84 S Ct 230, 11 L Ed 2d 173)." 386
US 18, 23.

The Court in *Chapman* went on to recognize cer-
tain constitutional rights "so basic to a fair trial
that their infraction can never be treated as harm-
less error." (p 23) The Court in *Chapman* cited
*Payne* v. *Arkansas* (1958), 356 US 560 (78 S Ct
844, 2 L Ed 2d 975), a coerced confession case, in a
footnote to the preceding statement. Add this fact
to the statement of this Court in *People* v. *Sum-
mers* (1968), 15 Mich App 346, 356:

"Where an involuntary confession has been in-
troduced at trial, the defendant is entitled to a new
trial even though there is substantial evidence, apart
from the confession, tending to demonstrate his
guilt. The introduction of an involuntary confes-
sion is never harmless error. *Lynum* v. *Illinois*
(1963), 372 US 528, 537 (83 S Ct 917, 9 L Ed 2d
922)",

and it is clear that any time a confession, obtained in violation of the requirements of *Miranda* v. *Arizona, supra,* is admitted into a criminal trial, reversible error is committed.[2]

For the above reasons, I would reverse and remand.

---

2 *People* v. *Ansley* (1969), 18 Mich App 659.