PEOPLE *v.* WHISENANT.

1. CRIMINAL LAW—RIGHT TO PRESENCE OF COUNSEL—POLICE INTERROGATION.

> The need for counsel to protect the constitutional privilege against self-incrimination comprehends not merely a right to consult with counsel before questioning by a law-enforcement officer, but also to have counsel present during any questioning, if the accused so desires (US Const, Am 5).

2. SAME—RIGHT TO COUNSEL—POLICE INTERROGATION—DUTY TO INFORM.

> The absolute requirement of informing an accused, held for interrogation by a law-enforcement officer, of his constitutional right to consult with a lawyer and to have the lawyer with him during interrogation cannot be met by any amount of circumstantial evidence that he may have been aware of this right (US Const, Am 5).

3. SAME—CONFESSIONS—EVIDENCE—RIGHT TO COUNSEL—POLICE INTERROGATION.

> Trial court's determination, made outside presence of jury, that evidence of defendant's written confession to robbery armed was voluntarily given and therefore admissible at trial, *held*, to be error, where defendant was not informed of his constitutional right to have counsel present during police interrogation (US Const, Am 5; CLS 1961, § 750.529).

4. SAME—RIGHT TO COUNSEL—POLICE INTERROGATION—DUTY TO INFORM.

> Merely informing an accused at the time of his arrest of his constitutional right to have counsel does not meet constitutional requirement that an accused be informed of his right to have counsel present during police interrogation (US Const, Am 5).

---

REFERENCES FOR POINTS IN HEADNOTES

[1-4] 29 Am Jur 2d, Evidence § 555 *et seq.*

Appeal from Kent, Vander Wal (John), J. Submitted Division 3 March 5, 1968, at Grand Rapids. (Docket No. 2,847.)   Decided May 27, 1968.

Albert T. Whisenant was convicted of robbery armed. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney and *S. J. Venema,* Assistant Prosecuting Attorney, for the people.

*James E. Gould,* for defendant.

HOLBROOK, P. J.   Defendant, age 19, represented by court appointed counsel, was found guilty of robbery armed[1] by a jury on June 27, 1966, in the Kent county circuit court. He was sentenced on July 18, 1966, to a prison term of 7–1/2 to 15 years.

In appealing his conviction, defendant asserts that his written confession was involuntary and inadmissible at trial because he was not advised of his right to counsel as required by the rule of *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694). The transcript of a *Walker* hearing[2] held prior to trial to determine the voluntariness of defendant's written statement discloses the following pertinent facts: On February 2, 1966, defendant was contacted at his place of employment shortly after noon by 2 detectives of the Grand Rapids police department and defendant's probation officer. He was taken into custody and informed of his rights in the following manner:

---

[1] CLS 1961, § 750.529 (Stat Ann 1968 Cum Supp § 28.797).

[2] See *People* v. *Walker* (On Rehearing, 1965), 374 Mich 331.

*(Detective Woronko on direct examination)*

"Q. You had a conversation with him [defendant] at that time [the time of arrest]?

"A. Yes sir.

"Q. Would you please relate that conversation?

"A. He was seated in the back seat, I told him at that time, that he was under arrest for armed robbery, and that the crime happened on December 21, of 1965, that he was entitled to an attorney, that if he could not afford an attorney the court would appoint an attorney. That he did not have to talk to us, say even one word. Also that anything he said could be used for or against him. And also that we could not make him any promises or any threats.

"Q. Did he say anything at that time?

"A. No sir.

"Q. Where did you go from there?

"A. We proceeded to the city jail, basement of the police headquarters.

"Q. What occurred there?

"A. Together with the turnkey we booked him for armed robbery.

"Q. Did you have a conversation at that point?

"A. Yes sir.

"Q. What was that?

"A. I asked him if he cared to go upstairs and talk to me. He said what for, I said well why don't you come up and I will show you the evidence I have got against you. He said okay so we went upstairs to the second floor.

"Q. What did you do when you got up there?

"A. When we got upstairs I let him sit at the desk. I looked up the file on this Crystal Flash armed robbery case. I brought the package back to the desk, filed through it, found what I wanted and I came up with a composite picture, which is a drawing that was made by the victim, put together this composite picture of this man, I showed it to him. And he took a look at it, and he said well I might as well tell you I did it. Then I asked him if he would mind giving this to me in a written statement. Then he

said okay. I asked him how far he went to school, and I don't remember exactly what he said but I told him it would be just like writing a story, a composition, and he agreed to do this which he did. * * *"

[*Detective Woronko on cross-examination*]

"Q. Now when you showed him these pictures did you tell him that you had knowledge he committed the crime?

"A. Yes, sir.

"Q. Did you also tell him you were informed by a reasonable source that he was involved?

"A. Yes, sir."

Defendant then testified to the events which took place after his arrest:

"Q. Did he tell you what rights you had at that time?

"A. Yes, he explained them to me.

"Q. What did he tell you?

"A. He told me I was entitled to counsel and anything I would say could be used against me but I didn't clearly understand the facts that if I was indigent I was entitled to counsel provided by the State at that time. I thought I had to go through a court proceedings first. * * *

"Q. And then you were taken down to the station?

"A. Yes, I was.

"Q. Did anybody talk to you about the crime at that time?

"A. After he had taken me upstairs he talked to me about the crime.

"Q. Did they talk to you at all about it downstairs?

"A. No, he just asked me if I would go upstairs and talk to him.

"Q. Now did they tell you of your right to counsel at that time to be with you when you went upstairs?

"A. No he didn't.

"Q. What happened when you got upstairs?

"A. Well, they seated me at a desk.

"*Q*. Was anybody else present besides Officer Woronko?

"*A*. Yes, Detective McGuire and he seated me at a desk and ask me if I had anything to tell him.

"*Q*. What did you tell him?

"*A*. Well, I said I wanted to see what he had me on first. He showed me some pictures at that time he told me they had taken pictures of, I believe it was 10 others that stayed at the same place I did and I was the one that suited the description best.

"*Q*. Then what happened after that?

"*A*. Well, he asked me if I would sign the statement for him. I told him I would. He set it in front of me and told me to read it.

"*Q*. Now did he tell you that he knew about your involvement in that case?

"*A*. Yes, he told me he learned from a reliable source that I was involved in a crime.

"*Q*. At any time when you were upstairs did he tell you of your right to counsel?

"*A*. No, he didn't, he just told me to read the sheet.

"*Q*. Were you at any time told you had a right to counsel at any time during the time you were talking to the police officers about the crime?

"*A*. No, I wasn't, not after right in the car."

At the conclusion of the *Walker* hearing, the lower court found defendant's statement to have been voluntarily given and therefore admissible in evidence at trial.

The substance of defendant's contentions are (1) the officers failed to inform defendant at any time that he was entitled to have counsel present with him during custodial questioning and (2) the officers failed to repeat the "Miranda warnings" initially given defendant in the car immediately prior to obtaining defendant's written statement.

*Miranda* v. *Arizona, supra,* states in part on pp 470, 471, 472:

"The need for counsel to protect the Fifth Amendment privilege comprehends not merely a right to consult with counsel prior to questioning, *but also to have counsel present during any questioning if the defendant so desires.* * * *

"Accordingly we hold that *an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation* under the system for protecting the privilege we delineate today. As with the warnings of the right to remain silent and that anything stated can be used in evidence against him, *this warning is an absolute prerequisite to interrogation.* No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead. Only through such a warning is there ascertainable assurance that the accused was aware of this right." (Emphasis supplied.)

The testimony taken at the *Walker* hearing held in the case at hand, although indicating a voluntary confession under former standards, does not demonstrate compliance with *Miranda, i.e.,* nowhere does it appear that defendant was informed of his right to have counsel, retained or appointed, present during questioning and the giving of his statement. Merely informing defendant at the time of arrest that he had a right to counsel did not meet the requirements of *Miranda.*

Because this Court is bound by the decision of the United States Supreme Court in *Miranda* v. *Arizona, supra,* we are required to hold the alleged confession inadmissible. It is unnecessary to consider defendant's second claimed point of error.

Reversed and remanded for new trial.

QUINN and McINTYRE, JJ., concurred.