PEOPLE v. WHISENANT

OPINION OF THE COURT

1. CRIMINAL LAW—CUSTODIAL INTERROGATION—RIGHTS OF ACCUSED—TRIALS.

The standards set down by the United States Supreme Court concerning the rights of an accused during custodial interrogation applies to all trials commenced in Michigan after June 13, 1966.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 6] 21 Am Jur 2d, Criminal Law §§ 313, 314.
29 Am Jur 2d, Evidence §§ 555–557.
Necessity of informing suspect of rights under privilege against self-incrimination, prior to police interrogation.    10 ALR3d 1054.
[2] 21 Am Jur 2d, Criminal Law § 161.
[3] 5 Am Jur 2d, Appeal and Error § 744.
[4] 5 Am Jur 2d, Appeal and Error §§ 990, 991, 996.
20 Am Jur 2d, Courts §§ 111–117.
[5] 29 Am Jur 2d, Evidence §§ 526, 529, 532.
[7] 21 Am Jur 2d, Criminal Law § 512 et seq.

2. Criminal Law—Commencement of Prosecution—Warrants—Arrest—Binding Over for Trial.

  The issuing of a warrant in good faith and delivery to an officer to execute is a sufficient commencement of the prosecution if it appears that the defendant was afterwards arrested upon that warrant and bound over for trial.

3. Appeal and Error—Remand—Law of the Case.

  The last utterance of an appellate court determines the law of the case, and upon remand for another trial subsequent to the appeal, the trial court is bound to follow the law as stated by the appellate court.

4. Courts—Order of Appellate Court.

  The action of a trial court, clearly disregarding an order of the Michigan Court of Appeals, is not to be tolerated.

Concurring Opinion

T. E. Brennan, J.

See headnotes 3 and 4.

Dissenting Opinion

Black, J.

5. Criminal Law—Confessions—Admissibility—Evidence.

  *A handwritten and signed confession, made February 3, 1966 in the unusual circumstances of utter voluntariness with no pretense of duress, dictation or interference, was properly admitted in evidence at defendant's trial on June 27, 1966 and at his new trial for the same offense.*

6. Courts—Prospective Effect of Decisions—Criminal Law—Confessions—Admissibility—Commencement of Prosecution—Trials.

  *Rules established by a decision of the Supreme Court of the United States governing the admissibility of confessions obtained during police interrogation apply only to prosecutions commenced after that decision became prospectively effective and not to trials commenced thereafter if the prosecution was commenced before the effective date of those rules.*

7. Criminal Law—Motion Nolle Prosequi—Public Funds—Cruelty of Prosecutions—Presumptions.

  *Defendant should be released on motion* nolle prosequi, *partly to eliminate more waste of prosecutory, judicial and jury-duty time added to the sapping of additional public funds, and*

*partly to terminate the legally presumptive cruelty of his prosecution where he was granted a new trial on appeal after conviction, he was again convicted and granted a new trial again by the Michigan Court of Appeals.*

Appeal from Court of Appeals, Division 3, Quinn, P. J., and Holbrook and T. M. Burns, JJ., reversing and remanding Kent, John H. Vander Wal, J. Submitted February 3, 1971. (No. 31 January Term 1971, Docket No. 52,735). Decided June 1, 1971.

21 Mich App 518 affirmed.

Albert T. Whisenant was convicted of robbery armed. Defendant appealed to the Court of Appeals. Reversed and remanded. The people appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, and *Donald A. Johnston III,* Chief Appellate Attorney, for the people.

*Smith, Haughey & Rice* (by *Thomas F. Blackwell* and *Michael S. Barnes*), for defendant.

SWAINSON, J. On December 21, 1965, an armed robbery was committed at a gas station in Grand Rapids, Michigan. On February 3, 1966, a warrant was issued for defendant's arrest on suspicion of his having been an accomplice in this robbery. Defendant was arrested at his place of employment. He was not informed of his right to have counsel present during any custodial interrogation and prior to his making any statement, nor did he waive any of these rights. During the custodial interrogation and without counsel present, defendant made a writ-

ten confession concerning the armed robbery of December 21, 1965.

Defendant's jury trial was held on June 27, 1966, two weeks subsequent to the *Miranda* decision[1] which became effective on June 13, 1966. Defendant's confession of February 3, 1966, was admitted into evidence through the testimony of detective Woronko, who had interrogated defendant. Defendant was found guilty of the crime of robbery armed, and on July 18, 1966, was sentenced to 7-1/2 to 15 years imprisonment.

At the time of trial, defendant objected to the use of the confession on the ground that it was inadmissible under the standards laid down in *Miranda*. The Court of Appeals reversed his conviction and remanded to the trial court for retrial with the express instruction that the contested confession not be admitted.[2]

The Court of Appeals specifically held that the trial court was in error in admitting the confession in light of the fact that the defendant had not been informed of his constitutional right to have counsel present during the interrogation period.

Upon remand, the defendant was again tried on July 29 and 30, 1968, by a jury and before the same judge. The contested confession was again admitted over the strenuous objection of the defendant, upon the finding of the trial judge that it was admissible under Title II of the Federal Omnibus Crime Control and Safe Streets Act of 1968. Defendant was again found guilty and again sentenced to 7-1/2 to 15 years.

On August 28, 1969,[3] the Court of Appeals held that the Federal Omnibus Crime Control Act

---

[1] *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974).

[2] *People* v. *Whisenant* (1968), 11 Mich App 432.

[3] *People* v. *Whisenant* (1969), 19 Mich App 182.

referred to only Federal prosecutions and thus was inapplicable to this case. In addition, the Court of Appeals held that the trial court was bound to follow the law as stated by the appellate court. The Court of Appeals then reversed and again remanded for a new trial without the use of the confession.

The people thereafter petitioned for rehearing, relying upon this Court's decision in *People* v. *Woods,* 382 Mich 128, decided August 4, 1969. On rehearing, the Court of Appeals adhered to its earlier opinion and again remanded.[4] We granted leave to appeal (383 Mich 776).

The issue before this Court is whether the standards set down in *Miranda* v. *Arizona, supra,* concerning the rights of an accused during custodial interrogation are applicable to all trials commenced after June 13, 1966, or whether the standards are applicable only to prosecutions commenced after that date.

## I.

In *Johnson* v. *New Jersey* (1966), 384 US 719 (86 S Ct 1772, 16 L Ed 2d 882), decided one week after *Miranda,* the court stated (p 721) :

"In this case we are called upon to determine whether *Escobedo* v. *Illinois,* 378 U.S. 478 (1964), and *Miranda* v. *Arizona, ante,* p 436, should be applied retroactively. We hold that *Escobedo* affects only those cases in which the *trial began* after June 22, 1964, the date of that decision. We hold further that *Miranda* applies only to cases in which the *trial began* after the date of our decision one week ago." (Emphasis added.)

This is the holding of the *Johnson* case and would, without more, be controlling upon this Court. However, the court also said (p 733) :

---

[4] *People* v. *Whisenant* (On Rehearing) (1970), 21 Mich App 518.

"In the light of these additional considerations, we conclude that *Escobedo* and *Miranda* should apply only to *cases commenced* after those decisions were announced." (Emphasis added.)

This statement was, of course, in conflict with the earlier one quoted above. "Prosecutions commenced" and "trials commenced" are clearly not synonymous. However, the court then seemingly disregarded the statement when it stated (p 734):

"Because *Escobedo* is to be applied prospectively, this holding is available only to persons whose *trials began* after June 22, 1964, the date on which *Escobedo* was decided. * * *

"This we have done in *Miranda,* and these guidelines are therefore available only to persons whose *trials had not begun* as of June 13, 1966." (Emphasis added.)

In *Jenkins* v. *Delaware* (1969), 395 US 213 (89 S Ct 1677, 23 L Ed 2d 253), the court held that the standards set down in *Miranda* did not apply to persons whose retrials had commenced after the date of *Miranda* if the original trial had begun before that date. Chief Justice Warren, speaking for the court, stated (p 219):

"In *Johnson,* after considering the need to avoid unreasonably disrupting the administration of our criminal laws, we selected the commencement of trial as determinative. We of course could have applied *Miranda* to all judgments not yet final, although they were obtained in good-faith reliance upon constitutional standards then applicable. See *Linkletter* v. *Walker,* 381 U.S. 618 (1965). As we pointed out, however, that choice 'would [have] impose[d] an unjustifiable burden on the administration of justice.' 384 U.S., at 733. On the other hand, we could have adopted the approach we took in *Stovall* [*Stovall* v. *Denno* (1967), 388 US 293 (87

S Ct 1967, 18 L Ed 2d 1199)] and *Desist* [*Desist* v.
*United States* (1969), 394 US 244 (89 S Ct 1030, 22
L Ed 2d 248)] and made the point of initial reliance,
the moment the defendant is interrogated, the opera-
tive event.  See Schaefer [Schaefer, *The Control of
'Sunbursts': Techniques of Prospective Overruling*,
42 NYU L Rev 631, (1967)] at 646.  But in an
effort to extend the protection of *Miranda* to as
many defendants as was consistent with society's
legitimate concern that convictions already validly
obtained not be needlessly aborted, we selected the
commencement of the trial."

These statements from *Jenkins* while not con-
trolling because they are dicta, in that case, are
nevertheless instructive and do appear to give evi-
dence of the United States Supreme Court's intent.
None of the justices dissented from Chief Justice
Warren's statement on this point.

Thus, while the United States Supreme Court has
made conflicting statements as to the date of ap-
plication of the *Miranda* decision, we feel that it has
been sufficiently clear to hold that *Miranda* applies
to all trials commenced in Michigan after June 13,
1966.

The Michigan Supreme Court has also previously
clearly enunciated the law on this point in question
in the case of *People* v. *Fordyce* (1966), 378 Mich
208.  The Court stated (p 211):

"On June 20, 1966, the Supreme Court of the
United States in the case of *Johnson* v. *New Jersey*
[1966], 384 US 719 (86 S Ct 1772, 16 L ed 2d
882), held that the guidelines set forth in *Miranda*
are available only to persons whose trials had not
begun as of June 13, 1966."

In *Johnson* v. *New Jersey, supra,* although there
was one reference to the term "prosecution com-
menced," the court stated at three separate points

in the decision that the determinative date was "trial commenced." The people quote several statements which, they assert, support their contention that "prosecution commenced" applies. However, these statements merely indicate why the court applied *Miranda* prospectively and not whether the "prosecution commenced" or "trial commenced" is the applicable date.

Thus, while the United States Supreme Court might have chosen to limit *Miranda* to confessions taken after June 13, 1966, clearly it did not do this. There are several reasons to support our conclusion on the choice of "trials commenced." First, the choice of "prosecutions commenced" could not serve any useful purpose. If the court felt that reliance was the prime factor, the applicable date should be "all confessions obtained after June 13, 1966."[5] "Prosecutions commenced" certainly would not lend itself to the test of reliance.

Second, the United States Supreme Court in asserting an applicable date attempts to lend uniformity and certainty to the decisions of lower and state courts. The choice of "prosecutions commenced" accomplishes neither of these purposes. In *People* v. *Clark* (1876), 33 Mich 112, in discussing when a prosecution is commenced, the Court stated (p 119):

"The issuing of the warrant in good faith, and delivery to an officer to execute, is a sufficient commencement, if it appears that the defendant was afterwards arrested upon that warrant and bound over for trial."

---

[5] See, *e.g.*, *Desist* v. *United States* (1969), 394 US 244 (89 S Ct 1030, 22 L Ed 2d 248), where the court held that the rule laid down in *Katz* v. *United States* (1967), 389 US 347 (88 S Ct 507, 19 L Ed 2d 576) applied only to cases where the prosecution seeks to use wire tapping evidence obtained after December 18, 1967, the date of the *Katz* opinion.

See, also, *People* v. *Clement* (1888), 72 Mich 116, and *In re Grzyeskowiak* (1934), 267 Mich 697.

In Virginia, however, prosecution is commenced at arraignment.[6]  Other states have different rules. For example, in California and in Florida, the filing of an indictment is the commencement of the prosecution.[7]

Thus, the problem of equal protection presents itself.  If a warrant was issued in Michigan on June 12, 1966, and the suspect arrested and interrogated, his confession could be used against him. However, if a warrant was issued in Virginia on June 12, 1966, and a suspect was arrested and interrogated but not arraigned until June 14, his confession could not be used against him.  Thus, the Federal constitutional protection of a citizen would vary from state to state.  This is precisely what the equal protection clause in the Federal constitution seeks to prevent.[8]

Third, the application of the "prosecution commenced" rule in Michigan could conceivably create very anomalous situations.  For example, if a warrant was issued on June 12, 1966, and the suspect was not arrested and interrogated until subsequent to June 13, 1966, under this rule any confession even though obtained after *Miranda* could be used against the defendant.

The people cite *People* v. *Woods* (1969), 382 Mich 128, as authority to support the "prosecutions commenced" theory.  However, as a majority of the Court of Appeals pointed out, *Woods* is not inconsistent with the "trials commenced" theory.  *People* v. *Whisenant* (On Rehearing 1970), 21 Mich App

---

[6] *Penn* v. *Commonwealth* (1969), 210 Va 242 (169 SE2d 427).

[7] *People* v. *Ayhens* (1890), 85 Cal 86 (24 P 635); *Lowe* v. *State* (1944), 154 Fla 730 (19 S2d 106).

[8] *Maxwell* v. *Bugbee* (1919), 250 US 525, 541 (40 S Ct 2, 63 L Ed 1124).

518, 522. In *Woods,* this Court, per Justice BLACK, after thoroughly analyzing the pertinent authorities, ruled that *Miranda* did not apply to retrials if the first trial occurred prior to the *Miranda* decision. This, of course, was the conclusion that the United States Supreme Court reached in *Jenkins* v. *Delaware, supra.* Nothing we say today is inconsistent with that opinion.

## II.

However, there is an alternative ground upon which we affirm the Court of Appeals. The Court of Appeals in *People* v. *Whisenant* (1968 [No. 1]), 11 Mich App 432, had reversed and remanded for a new trial without the admission of the confession. The trial court disregarded the order of the Court of Appeals and again allowed in the confession. As the Court of Appeals stated in *People* v. *Whisenant* (1969 [No. 2]), 19 Mich App 182, 189:

"It is fundamental law that the last utterance of an appellate court determines the law of the case, and upon remand for another trial subsequent to the appeal, the trial court is bound to follow the law as stated by an appellate court. If a litigant has any objection to the law as stated by the appellate court, his redress is an application for rehearing to the deciding court or an appeal to a still higher tribunal. *George* v. *Wayne Circuit Judge* (1953), 336 Mich 543; *Thompson* v. *Hurson* (1919), 206 Mich 139; *American Insurance Co. of Newark* v. *Martinek* (1921), 216 Mich 421; *Pierce* v. *Underwood* (1897), 112 Mich 186. In CL 1948, § 600.314, as amended by PA 1964, No 281 (Stat Ann 1969 Cum Supp § 27A.314) it is provided:

" '(1) The decisions on appeal of the Court of Appeals are final, except as reviewed by the Supreme Court as provided by Supreme Court rule.'

GCR 1963, 800.4 added October 9, 1964, effective January 1, 1965, provides:

" 'The decision of a majority of the judges of a Division or panel in attendance at the hearing shall constitute the decision of the Court. Decisions of the Court of Appeals are final except as reviewed by the Supreme Court on leave granted by the Supreme Court.' "

The trial court in this case clearly disregarded the order of the Court of Appeals. Such action is not to be tolerated, and we agree with the above statement of the Court of Appeals as to the limited function that remains with a lower court when an appellate court speaks.

Court of Appeals affirmed.


T. M. KAVANAGH, C. J., and ADAMS, T. G. KAVANAGH, and WILLIAMS, JJ., concurred with SWAINSON, J.


BRENNAN, J. *(concurring).* I concur with my Brother SWAINSON for the reason given under II of his opinion.


BLACK, J. *(for release of the defendant).* In the people's brief this appeal[1] is introduced aptly according to past appellate proceedings as *Whisenant I* ([1968], 11 Mich App 432), *Whisenant II* ([1969], 19 Mich App 182) and *Whisenant III* ([1970], 21 Mich App 518).

Let us dub this one *Whisenant IV and out,* effected by an order *nolle,* rather than order the continuation of a now provably vain prosecution. Judging by the cited appellate actions and now the instant majority decision, the people have no more

---

[1] Leave granted April 21, 1970 (383 Mich 776).

chance of convictional success than did that parabled dog, equipped with wax legs, when he tried to chase the asbestos cat through Hell. Who knows or even may estimate whether—should Mr. Whisenant appeal successively to our two appellate Courts from yet another conviction for this 1965 offense—still another *nunc pro tunc* decision of retroactivity will emanate from high judicial Lansing, requiring another trial for the same offense? It is manifest time for abject surrender, by the people, to Mr. Whisenant. Hopefully, he will not sue the people or their legal representatives for malicious prosecution. He will have two years within which to make up his mind on that, under MCLA § 600.5805 (Stat Ann 1962 Rev § 27A.5805).

I cannot agree with the summary statement of facts put forth in the first paragraph of the majority opinion. Let the actual testimony relate the circumstances which led up to Mr. Whisenant's voluntarily written confession.[2] (For that testimony see *Whisenant I* (1968), 11 Mich App at 434–436). I suggest that he now go discharged rather than permit him to draw anew upon a steadily dwindling public treasury for still more of this squandermania of public money[3]—upon useless

---

[2] Yes, he penned all of it neatly, with no pretense of duress, dictation, or interference. The very face of the instrument belies all thought of that. There isn't a misspelled word or grammatical error in it, or even a minor correction of the running narrative. See the appendix hereof for a copy, with specific designation of everything handwritten and signed by Mr. Whisenant.

It is hardly necessary to add that I agree fully with Judge Quinn, dissenting in *Whisenant II* and *Whisenant III*, that this confession, made February 3, 1966 in the unusual circumstances of utter voluntariness disclosed by this record, was properly admitted in evidence each time Mr. Whisenant was tried.

[3] It is not difficult for one familiar with the fees lawyers must charge today, their ever-expanding overhead considered (see to the fact *Babcock v. Public Bank* [1964], 366 Mich 124, 134), to estimate that with the conclusion of this present appeal the people's thus far futile prosecution of Mr. Whisenant will have cost Kent County

trials and appeals. He is free by this Court's order of April 21, 1970[4] and doubtless will remain so (absent still another felony added to his record) should there be another trial and series of appeals resulting from this 1965 armed robbery.

Turning to the specific merits of the people's stated question: Whether—with Mr. Whisenant's *confession* made in February of 1966 and his *prosecution* commenced that same month—he is entitled to another (a third that is) trial because his *first* trial commenced seven days *after Miranda* (cited below) was handed down June 13, 1966.

In *People* v. *Charlie Lee Woods* (1969), 382 Mich 128, 138, 139, this Court ruled—*unanimously:*

"We align our judgment with those of the State courts which view *Miranda* as applying only to *prosecutions commenced* after *Miranda* became prospectively effective." (Emphasis added.)

There is nothing ambiguous about this. Indeed, no one claims there is. It is instead coolly proposed and voted that the Court repudiate its solemn word, recorded less than two years ago. I stand by the united endorsement quoted; not today's disavowal.

This man Whisenant, tried and convicted twice for this 1965 felony, is now awarded a *third* trial, all at direct expense of Kent County as new brilliandeers of the law cut more fancy facets on the diamonds of precedent, purposed always toward reduction of the weight and value thereof. Surely curious days of judicially encouraged crime have descended upon us, what with hypertechnically twisted rulings like this which—seemingly at least—

in excess of $10,000. And this case is just one of scores and more like it, as our own ever-expanding records attest.

[4] The order provided that the trial court admit the defendant to bail.—REPORTER.

are designed for but one purpose; that of dis-
couraging and deterring prosecutions despite any
number of guilty verdicts rendered by 12 good men
and true.

As noted, Mr. Whisenant was *prosecuted* in Feb-
ruary of 1966. The felony for which he was
prosecuted was *committed* December 21, 1965. His
*confession,* the admissibility of which is chal-
lenged again under *Miranda* v. *Arizona* (1966), 384
US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d
974), was made *when he was arrested in February
of 1966.* *Miranda* as said was handed down June
13, 1966. Its qualifier, *Johnson* v. *New Jersey,* was
handed down seven days later, 384 US 719 (86 S
Ct 1772, 16 L Ed 2d 882). Now in 1971 it is said
that, since Whisenant's first *trial* did not *commence*
until June 27, 1966, seven days *after Johnson*
arrested retroactivity of *Miranda* and its predeces-
sors, the rule to apply to his *first* trial is other than
the one which would have applied properly to his
*1965 crime* and his February 1966 *prosecution* for
that crime. The Supreme Court of the United
States has not ordered this, nor has it ever
disavowed its word in *Miranda* as found by us in
*Woods.* *This Court simply plunges ahead of
Miranda by ignoring Woods.*

In *People* v. *Taylor* (1970), 383 Mich 338, 369,
370, Justice DETHMERS and I noted the bitter ex-
perience of the Supreme Court of California for
having relied upon *Escobedo* (1964), 378 US 478
(84 S Ct 1758, 12 L Ed 2d 977) as having been
*effected retroactively,* "only to be let down when
the Supreme Court belatedly ruled as in the *John-
son* case." Why should we run that risk, warned
now as California was, and warned again as we
were by that California Law Review quoted in
*People* v. *Taylor,* starting at 370?

It is enough to state today's situation. Again, as it will be again, this Court bends the law in favor of the felon and against our far-flung peninsular community. No wonder crime runs rampant in Michigan. This 1971 Court seems unable to affirm any conviction which, in the afterwitted view of its majority, has *not* been conducted and concluded with the celestial perfection of every trial that takes place at the 12 gates of Heaven. The situation doubtless is now beyond redemption. Are we not committed beyond return to that same flood of lawlessness as were the Romans when they suffered *their* decline, decay and utlimate fall—*from within?*

I would direct Mr. Whisenant's release on motion *nolle prosequi,* partly to eliminate more waste of prosecutory, judicial and jury-duty time added to the sapping of additional public funds, and partly to terminate the legally presumptive cruelty of his prosecution. After all, the offense for which he has been twice convicted is but common-place these days. It was only armed robbery.[5] Probation at most should have been the wrist-slap for such a petty offense. The Kent County prosecutor and our "one court of justice" must already have given him a raw deal. Let him up, say I. Let up also on taxpaying law-abiding Kent County.

---

[5] When Mr. Whisenant committed this particular offense he had been out on parole but a week, following an earlier conviction for another felony.

## *APPENDIX*

(Whisenant confession, held inadmissible. All portions typed below "statement" with light italics were handwritten by Mr. Whisenant.)

"GRAND RAPIDS POLICE DEPARTMENT    DATE: Feb. 3, 1966
Time Beginning  1:15 AM/PM      Time Ending  1:30 AM/PM
Location (Office, Bldg., etc) Detective Bureau; Police Headquarters
City, Village or Twp. & County      Kent County

#### 'STATEMENT'

My name is  *Albert Whisenant*  . I am *19* year of age. I live at  *429 Cadwell N.W., Grand Rapids, Michigan.*

I have been advised and I understand that I do not have to make any statement or answer any questions and that any statement I make or answers I give may be used in evidence against me in any criminal prosecution that may result from matters disclosed in this statement. I make the following statement freely and voluntarily, no threats or promises of any nature having been made to me by anyone, and it is the truth to the best of my knowledge.

Signature: *Albert Whisenant*

*I met Paul Boyer as I was coming in Tues., Dec. 21 and we began talking and joking and eventually led to something to do. It was approximately 1:00 a.m. then and he showed me a gun and we went riding around. I do not remember who suggested we commit this crime but as we passed the Crystal Flash we noticed only one station attendant and that this particular station was in a fairly secluded*

*location. We returned and parked the car and walked to the station and Paul walked in and told the man it was a stickup while I entered the cash drawer and took the money from it. At first the attendant though we were joking because he came toward Paul and Paul fired into the far corner of the garage and the attendant then told us he would give us the money. We told him no and left the station running and from there proceeded back to our home address. We got $85.00 from the station and divided it in my room at 429 Cadwell N.W.*

*Albert Whisenant*

R. Woronko 2-3-66
1:30 P.M."