# Order

**Michigan Supreme Court**
**Lansing, Michigan**

June 12, 2020

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

158102

PEOPLE OF THE STATE OF MICHIGAN,
        Plaintiff-Appellant,

v

LARICCA SEMINTA MATHEWS,
        Defendant-Appellee.

SC: 158102
COA: 339079
Oakland CC: 2016-260482-FC

_____/

On October 3, 2019, the Court heard oral argument on the application for leave to appeal the May 22, 2018 judgment of the Court of Appeals. On order of the Court, the application is again considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

VIVIANO, J. (*dissenting*.)

I dissent from the majority's decision to deny leave in this case because I believe that the Court of Appeals erred in concluding that the warnings provided to defendant were insufficient under *Miranda v Arizona*, 384 US 436 (1966), and its progeny. I would reverse.

## I

Defendant Laricca Mathews was charged with open murder, MCL 750.316, and related firearms charges arising out of the shooting death of her boyfriend, Gabriel Dumas. Defendant called 911 and told the dispatcher that she had shot Dumas. After the police arrived at the scene, she was taken into custody and transported to the Wixom Police Department. Defendant was interviewed twice while at the police station. Both interviews were videotaped, as required by MCL 763.8(2). During the first interview, Detective Brian Stowinsky provided defendant with an advice-of-rights form, which stated:

> Before any questions are asked of you, you should know: (1) you have a right to remain silent; (2) anything you say may be used against you; (3) you have a right to a lawyer, and (4) if you cannot afford a lawyer, one will be provided free.

> I understand what my rights are and am willing to talk.

Detective Stowinsky orally reviewed the advice-of-rights form with defendant, and the following exchange took place:

[*Detective Stowinsky*]: Ok, um, I'm going to review these, ok?

[*Defendant*]: Uh hmm.

[*Detective Stowinsky*]: I'm going to read these to you.

[*Defendant*]: Uh hmm.

[*Detective Stowinsky*]: Um, before I question, start asking you, you should know that you have a right to remain silent.

[*Defendant*]: Uh hmm.

[*Detective Stowinsky*]: Anything you say maybe [sic] used against you. You have a right to a lawyer, if you cannot afford a lawyer, one will be provided for free. Do you understand your rights?

[*Defendant*]: Yes.

[*Detective Stowinsky*]: Do you want to talk with me?

[*Defendant*]: Yeah, we can talk.

Defendant signed the form, and Detective Stowinsky proceeded to interview her. During the interview, defendant claimed that she and Dumas had been fighting and that she had shot Dumas in self-defense after Dumas attacked her.

Later that day, Sergeant Michael DesRosiers conducted a second interview with defendant. Before the interview, the following exchange took place:

[*Sergeant DesRosiers*]: . . . Alright, so um, Detective Stowinsky, remember he talked about your rights and everything?

[*Defendant*]: Uh hmm.

[*Sergeant DesRosiers*]: Same thing applies. Um, you don't, you don't have to even talk to me if you don't want to. You can get an attorney um, if you can't afford one, we'll make sure you get one.

[*Defendant*]: Ok.

[*Sergeant DesRosiers*]: So, um, we're just continuing the interview that you started with him. I just looked over the statement and have a couple questions about it. Um, so I'm looking at the statement and the problem I have, and you can stop me at any time you want, is, it's from the things in the statement don't necessarily match up with the evidence we found.

During the second interview, defendant claimed that she shot the victim when they were "face to face." When Sergeant DesRosiers told defendant that Dumas had been shot in the

back of the head, defendant speculated that the bullet may have ricocheted off the wall. She also suggested the shooting may have been an accident.

Defendant filed a motion to suppress the statements that she made to police arguing, in pertinent part, that the police failed to advise her that she had the right to have an attorney present both before and during questioning.[1] The trial court granted defendant's motion, concluding that the police had failed to inform defendant that she had the right to have an attorney present during the interrogation. The Court of Appeals initially denied the prosecution's interlocutory application for leave to appeal, but on remand from this Court, in a split decision, the Court of Appeals affirmed the trial court's ruling that suppressed defendant's statements. After recognizing the conflicting authority on the issue, the Court of Appeals agreed with the trial court, holding that "a general warning regarding a 'right to a lawyer' does not comply with the dictates of *Miranda*." *People v Mathews*, 324 Mich App 416, 429 (2018). Because there was no binding caselaw addressing this issue, the Court of Appeals undertook a lengthy and thorough review of its own cases, along with cases from the federal circuits and our sister state courts. Ultimately, the Court of Appeals majority decided to follow its own prior decisions, see, e.g., *People v Whisenant*, 11 Mich App 432, 434 (1968),[2] and those of the federal circuit courts, holding that a defendant must be specifically advised of the right to the presence of an attorney during questioning. See, e.g., *United States v Noti*, 731 F2d 610, 615 (CA 9, 1984). The Court of Appeals described the decisions of other federal circuits holding that general warnings were sufficient as "disingenuous in light of *Miranda*'s mandate for clear and unambiguous warnings[.]" *Mathews*, 324 Mich App at 438.

II

*Miranda* has been called a "pathmarking decision." *Florida v Powell*, 559 US 50, 53 (2010). It ruled that "an individual must be 'clearly informed,' prior to custodial questioning, that he has, among other rights, 'the right to consult with a lawyer and to have the lawyer with him during interrogation.'" *Id*., quoting *Miranda*, 384 US at 471. It is beyond dispute, however, that *Miranda* was not intended, and has not been interpreted, as establishing a precise incantation that must be given prior to a custodial interrogation. *Miranda* itself said that either the warnings it laid down or "a fully effective equivalent" were required. *Miranda*, 384 US at 476; see also *Rhode Island v Innis*, 446 US 291, 297 (1980) (noting that the safeguards include the "*Miranda* warnings . . . or their equivalent").

---

[1] Defendant also contended that the statements should be suppressed because the police failed to advise her that she could terminate the questioning at any point. Although the trial court did not address this argument, the Court of Appeals rejected it and defendant has not appealed that ruling.

[2] Other opinions from the Court of Appeals followed the cursory analysis in *Whisenant*. See *People v Jourdan*, 14 Mich App 743 (1968); *People v Hopper*, 21 Mich App 276 (1970).

The Supreme Court's post-*Miranda* pronouncements on the topic similarly make clear that the "Court has not dictated the words in which the essential information must be conveyed." *Powell*, 559 US at 60; see also *California v Prysock*, 453 US 355 (1981) ("This Court has never indicated that the 'rigidity' of *Miranda* extends to the precise formulation of the warnings given a criminal defendant. . . . Quite the contrary, *Miranda* itself indicated that no talismanic incantation was required to satisfy its strictures."). The question is whether the warning that was given reasonably conveyed the rights specified in *Miranda*, and in making this determination the warning need not be interpreted as though it were a legal document. *Duckworth v Eagan*, 492 US 195, 203 (1989).

With regard to the specific warning at issue here—the notice of the right to an attorney—the Supreme Court has not established that the warning must expressly notify the suspect of the right to consult an attorney before questioning or have one present during it. Some comments in *Miranda* suggest such a requirement. See *Miranda*, 384 US at 471 ("Accordingly we hold that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation . . . ."). But other statements mentioned the right to an attorney's "presence" without specifying when and where the "presence" would occur.[3] And when the Court gave an example of satisfactory warning language that complied with the standards it had set forth, it chose (and even lauded as "exemplary") the standard warning that was given by the Federal Bureau of Investigation (FBI). *Miranda*, 384 US at 483. This is important because the FBI's practice was to give only the general warning "that the person has . . . a right to counsel," which included no information regarding when the right applied. *Id*. at 484.[4]

---

[3] See *id*. at 444 ("Prior to any questioning, the person must be warned that . . . he has a right to the presence of an attorney . . . ."); *id*. at 479 (An individual in custodial interrogation "must be warned prior to any questioning that . . . he has the right to the presence of an attorney."); see generally *United States v Clayton*, 937 F3d 630, 639 (CA 6, 2019) (discussing the ambiguity surrounding *Miranda*'s use of "presence"); *Commonwealth v LaJoie*, 95 Mass App 10, 15 (2019) ("But when it came time to summarize what a suspect needed to be told, the *Miranda* opinion did not formulate the warning in terms of a right to counsel 'during questioning'; rather, the Court in *Miranda* used the language, the 'right to the presence of an attorney,' without any temporal component.").

[4] The warning given more recently by the FBI is more specific. See FBI, *Legal Handbook for Special Agents* (2003), p 93 (quoting Form FD-395, which notes the person's right to "talk to a lawyer for advice before" questioning, to "have a lawyer with [him or her] during questioning," and to have a lawyer appointed before questioning if the suspect cannot afford one), available at <https://vault.fbi.gov/Legal%20Handbook%20for%20FBI%20Special%20Agents/Legal%20Handbook%20for%20FBI%20Special%20Agents%20Part%201%20of%201/view> (accessed May 29, 2020) [https://perma.cc/NK9W-35PF].

As courts have recognized, *Miranda*'s various statements thus create some ambiguity.[5] And, while it appears the discussion of the FBI warnings was not necessary to decide the case,[6] the bottom line is that the Court specifically approved a warning that lacked any explicit reference to the time when the right to counsel attached, i.e., that it attached *before* or *during* the interrogation. The Sixth Circuit Court of Appeals explained it well:

> To be sure, *Miranda* clarified that "presence" includes the right to consult with an attorney before and during questioning. But *Miranda* did not require a warning exactly to that effect. Case in point: *Miranda* acknowledged that the warnings employed by the FBI at the time of its decision were "consistent with the procedure which we delineate today." And those warnings, while advising of the right to counsel, conspicuously did not state expressly that counsel may be present during interrogation. [*United States v Clayton*, 937 F3d 630, 639 (CA 6, 2019) (citation omitted).]

See also *United States v Lamia*, 429 F2d 373, 376-377 (CA 2, 1970) (relying on *Miranda*'s approval of the FBI warnings); cf. *People of Territory of Guam v Snaer*, 758 F2d 1341, 1342 (CA 9, 1985) ("The Supreme Court in *Miranda* . . . , although making clear that one does have the right to consult with counsel before questioning, . . . is ambiguous as to how explicitly the person must be *warned* of that right."). And *Miranda* was not the only time the Supreme Court has endorsed a general advisement of the right to an attorney bereft of any temporal elements. In *Oregon v Elstad*, 470 US 298, 315 n 4 (1985), which addressed other issues, the Court stated that a warning that the suspect had the right to "consult an attorney at state expense" was "clear and comprehensive" and a part of a "careful administering of *Miranda* warnings."

---

[5] This point was not lost on the dissenters, who questioned how the FBI's warnings squared with the other statements in the majority's decision. See, e.g., *id*. at 500 n 3 (Clark, J., concurring in the result of a companion case and dissenting in *Miranda*) (noting that the FBI's warning regarding appointment of counsel was not as broad as the rule expressed by the majority); *id*. at 521 (Harlan, J., dissenting) (stating that while "[h]eaviest reliance is placed on the FBI practice, . . . the FBI falls sensibly short of the Court's formalistic rules.").

[6] See *Miranda*, 384 US at 521 n 19 (Harlan, J., dissenting) (noting that this portion of the opinion was "*obiter dictum*"). To the extent this portion of *Miranda* was dicta, it had plentiful company in the opinion, much of which has been followed as binding nonetheless. See *Faheem-El v Klincar*, 841 F2d 712, 730 (CA 7, 1988) (Easterbrook, J., concurring) ("The details of *Miranda* . . . could be disregarded [as dicta] on the ground that Ernesto Miranda had not been given any warning, so the Court could not pronounce on the consequences of giving three but not four of the warnings on its list."). As I explain below, however, even if dicta, the passages on the FBI warnings are particularly meaningful.

In other cases, the Supreme Court has approved warnings that offered less than was encompassed in *Miranda*'s more expansive passages. These cases instead focus on whether the warnings indicated limitations on the right to counsel. In *California v Prysock*, for example, the Court approved a warning that the defendant had a "right to talk to a lawyer before [being] questioned." *Prysock*, 453 US at 356. *Miranda* was satisfied because "nothing in the warnings . . . suggested any limitation on the right to the presence of appointed counsel different from the clearly conveyed rights to a lawyer in general[.]" *Id*. at 360-361. Similarly, in *Duckworth v Eagan*, the defendant had been warned, "You have a right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning. . . . We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court." *Duckworth*, 492 US at 198 (emphasis and quotation marks omitted). The Court concluded that those warnings, when taken together, satisfied *Miranda* because they informed the defendant of his rights and did not specifically inform defendant that the right to counsel only attached during trial. *Id*. at 204-205. Most recently, in *Florida v Powell*, the Court upheld a warning that informed the defendant of his right to "talk to a lawyer before answering any of our questions" and that he could invoke his rights at any time but did not expressly state that the defendant could have the lawyer present during the interrogation. *Powell*, 559 US at 54 (quotation marks omitted). A commonsense interpretation of the warning, the Court concluded, conveyed the defendant's rights. *Id*. at 62-64.

Among other courts, a split exists over whether the advisement must expressly mention that the right to a lawyer applies before or during the interrogation.[7] Some courts have concluded that the right to have an attorney present at these times is independently critical and not adequately conveyed by a notice that mentions neither period or only one but not the other. See, e.g., *United States v Noti*, 731 F2d 610, 615 (CA 9, 1984) ("There are substantial practical reasons for requiring that defendants be advised of their right to counsel during as well as before questioning.").[8]

---

[7] See generally McMahon, *Necessity That* Miranda *Warnings Include Express Reference to Right to Have Attorney Present During Interrogation*, 77 ALR Fed 123 (2020 update) (collecting and commenting on cases discussing presence of attorney during the interrogation); Comment, *Adding (Or Reaffirming) A Temporal Element to the* Miranda *Warning "You Have the Right to an Attorney,"* 90 Marq L Rev 1009, 1019-1024 (2007) (noting the circuit split as well as intracircuit conflict and tracing the source to *Miranda*'s disparate statements).

[8] See also *United States v Tillman*, 963 F2d 137, 141 (CA 6, 1992) holding that a general warning was inadequate because "the police failed to convey to defendant that he had the right to an attorney both before, during and after questioning"); *United States v Anthon*, 648 F2d 669, 672 (CA 10, 1981) (holding that a warning which failed to, among other things, "advise[] that [the defendant's] right to counsel encompassed . . . the right to have counsel present during any questioning" violated *Miranda*); *Windsor v United States*, 389 F2d 530, 533 (CA 5, 1968) ("Merely telling [an individual being questioned] that he could

Other cases, however, find that general warnings—i.e., those that do not expressly describe part or all of the temporal scope of the right to counsel—suffice. These courts have offered compelling reasons that reflect the Supreme Court's commonsense approach and that I find more persuasive. One threshold factor that courts have found significant is whether a suspect was given preinterrogation notice "that the warnings that followed were a prerequisite to any interrogation . . . ." *Carter v People*, 398 P3d 124, 128 (Colo, 2017). At a more fundamental level, these courts embrace the unremarkable proposition that because "an unqualified statement lacks qualifications, all that police officers need do is convey the general rights enumerated in *Miranda*." *United States v Frankson*, 83 F3d 79, 82 (CA 4, 1996). In other words, advising of the "right to counsel," without qualifications, conveys that the right obtains before and during the interrogation.[9] A related factor in these

speak with an attorney or anyone else before he said anything at all is not the same as informing him that he is entitled to the presence of an attorney during interrogation . . . ."); *State v Serna*, 2018-NMCA-074, ¶ 21 (NM App, 2018) (concluding "that *Miranda* requires that a person be warned, at least implicitly, that they have a right to counsel prior to questioning" and finding that no such warning was given in the case); cf. *United States v Wysinger*, 683 F3d 784, 798-800 (CA 7, 2012) (concluding that a warning appearing to give the defendant a choice of when he could have a lawyer—that he "had the 'right to talk to a lawyer for advice before we ask any questions or have . . . an attorney with you during questioning' "—violated *Miranda*); *State v McNeely*, 162 Idaho 413, 414, 416-417 (2017) (concluding that an advisement of a "right to an attorney . . . [t]o help you with—stuff" did not satisfy *Miranda*).

Some of these cases warrant additional comment, as the state of the law in these circuits is not entirely clear. Recently, the Sixth Circuit has explained that other errors in *Tillman*—specifically, the failure to advise that the defendant's statements could be used against him—were the thrust of the case, and thus its brief comment on the warning related to the attorney was "not persuasive." *Mitchell v MacLaren*, 933 F3d 526, 535 (CA 6, 2019) (habeas proceedings). Additionally, the Ninth Circuit has subsequently held that a defendant "need not have been informed explicitly of his right to consult with counsel prior to questioning" when the warning adequately conveyed that right by stating he could have counsel appointed before the interrogation and present with him during it. *United States v Loucious*, 847 F3d 1146, 1151 (CA 9, 2017); see also *Sweeney v United States*, 408 F2d 121, 124 (CA 9, 1969) (finding sufficient a general warning that the defendant "was entitled to an attorney" because "following, as it did, immediately on the warning as to the right to remain silent and the risk in not doing so, would, we think, be taken by most persons to refer to the contemplated interrogation, not to some other time").

[9] See *United States v Caldwell*, 954 F2d 496, 502 (CA 8, 1992) ("When the only claimed deficiency is that of generality, the teaching of *Duckworth* that we are not construing a will or defining the terms of an easement convinces us that we cannot hold the warning in this case amounts to plain error."); *Lamia*, 429 F2d at 376-377 ("Lamia had been told *without qualification* that he had the right to an attorney and that one would be appointed if he

cases is that the warnings did not express "any temporal limitation that might even colorably be misunderstood to restrict the exercise of [the] right" to counsel in the interrogation. *Carter*, 398 P3d at 127.[10] Even so, the mere possibility of misunderstanding does not disqualify the warning, as the advisement in *Powell* was upheld despite risking confusion as to whether the right pertained to the interrogation itself. *Id*.[11] And, critically, this group of cases also cites *Miranda*'s approval of the FBI warnings. See *Clayton*, 937

---

could not afford one. Viewing this statement in context, Lamia having just been informed that he did not have to make any statement to the agents outside of the bar, Lamia was effectively warned that he need not make any statement until he had the advice of an attorney.") (emphasis added); cf. *State v Figueroa*, 146 A3d 427, 432 (Me, 2016) (noting, where the advisement referenced that the defendant already had an attorney, a general warning of "a right to an attorney" was "communicated an unqualified right to counsel" that could be invoked at any time).

This conclusion—that unqualified statements do not expressly or impliedly convey qualifications—not only comports with common sense, but it also makes sense under a well-known linguistic theory of conversation developed by H. P. Grice. He posited that participants in conversations generally adhere to the maxim of "Quantity," by which they expect that the information contained in statements will "be neither more nor less than is required." Grice, *Logic and Conversation*, in *3 Syntax and Semantics: Speech Acts* (New York: Academic Press, 1975), p 47. This means that contributions to the conversation will not be "overinformative" because "overinformativeness may be confusing in that it is liable to raise side issues; and there may also be an indirect effect, in that the hearers may be misled as a result of thinking that there is some particular POINT in the provision of the excess of information." *Id*. at 46. Thus, for example, the statement "Jane has two children" does not implicate that Jane has more than two children, even though the statement would remain true if she had a third child. Kaplan, *Linguistics and Law* (New York: Routledge, Taylor & Francis Group, 2020), p 7. In the same way, an unconditioned assertion that a suspect has the right to counsel does not implicate a temporal restriction on the right.

[10] See also *United States v Warren*, 642 F3d 182, 186 (CA 3, 2011) ("[The defendant] offers no rationale for a reasonable person's belief that the clear, unmodified statement '[y]ou have the right to an attorney' would be regarded as time-limited."); *State v King*, ___So3d___, ___ (La, 2020) (Case No. 2019-KK-01332), slip op at 6-7 ("The unelaborated upon warning given in the present case, which lacked any temporal aspect at all, implied no limitation on the right to counsel.").

[11] Justice Stevens's dissent in *Powell* recognized this fact, stating that although he was "doubtful that warning a suspect of his 'right to counsel,' without more, reasonably conveys a suspect's full rights under *Miranda*, . . . at least such a general warning does not include the same sort of misleading temporal limitation as in Powell's warning." *Powell*, 559 US at 73 n 8 (Stevens, J., dissenting).

F3d at 639.[12] This approach thus trusts that *Miranda* meant what it said regarding the FBI warnings. As I explain below, this is the proper way to interpret *Miranda*. Under these rationales, numerous courts have upheld advisements like that in the present case, i.e., without any express reference to the temporal scope of the right to counsel.[13]

My conclusion is also supported by the fact that temporal details are not required to impart the warning concerning the paramount right to remain silent. Even *Miranda*'s most detailed renditions of the warnings never suggested that the police had to specify *when* a suspect could exercise the unqualified "right to remain silent." See, e.g., *Miranda*, 384 US

---

[12] See also *Warren*, 642 F3d at 185 (noting that, in light of *Miranda*'s use of the FBI advisement, "it cannot be said that the *Miranda* court regarded an express reference to the temporal durability of this right as elemental to a valid warning").

[13] See *United States v Nash*, 739 F Appx 762, 765 (CA 4, 2018) ("[T]he phrase 'you have a right to an attorney,' under these circumstances, sufficiently advised Nash of his general right to consult with an attorney before and during the interrogation."); *Frankson*, 83 F3d at 81-82 (upholding advisement of "the right to an attorney"); *United States v Adams*, 484 F2d 357, 361 (CA 7, 1973) (finding sufficient a warning that the suspect had the "right to counsel, and if they haven't got funds to have counsel, . . . the court will see that they are properly defended") (quotation marks omitted); *Lamia*, 429 F2d at 377-378 (upholding warning that defendant had the "right to an attorney"); *King*, ___ So 3d at ___, slip op at 6-7 (holding that similar warning, without temporal elements, sufficed); *State v Nave*, 284 Neb 477, 495 (2012) (citing with approval the court's past cases upholding warnings that made no mention of a "temporal element" or mentioned only the right to have counsel at the interrogation); *Eubanks v State*, 240 Ga 166, 168 (1977) ("It is implicit in this [general] instruction [of the "right to an attorney" along with the other basic rights] that if the suspect desired an attorney the interrogation would cease until an attorney was present."); *People v Walton*, 199 Ill App 3d 341, 344 (1990) (finding that specifically informing the suspect "that he 'had a right to consult with a lawyer' " reasonably conveyed the rights as mandated by *Miranda*); cf. *Figueroa*, 146 A3d at 432 (concluding that a general warning was sufficient under the circumstances and noting that the advisement also indicated that the defendant already had an attorney).

Other courts have upheld similar, but slightly more detailed warnings. See *Warren*, 642 F3d at 184, 186-187 (upholding warning that "You have the right to an attorney. If you cannot afford to hire an attorney, one will be appointed to represent you without charge before any questioning if you wish") (quotation marks omitted); *Rigterink v State*, 66 So 3d 866, 893 (Fla, 2011) ("Hence, by advising Rigterink that he may have counsel '*present* prior to questioning,' the police reasonably conveyed to Rigterink . . . that counsel, if Rigterink so desired, would have been 'present' with Rigterink both before and during the custodial interrogation."); *LaJoie*, 95 Mass App at 11, 16-17 (upholding warning that the defendant had the right to counsel and if he could not afford one, an attorney would be appointed "prior to any questioning") (quotation marks omitted).

at 444, 467-468, 479. That an unqualified statement reasonably conveys the full breadth of the right to remain silent suggests that the same is enough for the right to an attorney: the former right is at the core of *Miranda*'s protection, whereas the latter is a means of protecting that core right.[14] Thus, it would make little sense, linguistically or logically, to demand additional details about the auxiliary right but not the fundamental right it was designed to protect. Cf. *Carter*, 398 P3d at 128 ("[I]t would be highly counterintuitive for a reasonable suspect in a custodial setting, who has just been informed that the police cannot talk to him until after they advise him of his rights to remain silent and to have an attorney, to understand that an interrogation may then proceed without permitting him to exercise either of those rights."). Indeed, even the Court of Appeals in this case found that the police did not need to specifically inform defendant that she was able at any time to invoke her right to remain silent. See *Mathews*, 324 Mich App at 428, quoting *Miranda*, 384 US at 467-468 ("An individual who has been informed in 'clear and unequivocal terms' at the outset of the interrogation that 'he has the right to remain silent' will understand 'that his interrogators are prepared to recognize his privilege should he choose to exercise it.' "). Consequently, I believe that an unqualified statement, unadorned with temporal components, is sufficient to advise a person of both rights.

## III

In the present case, I conclude that the general warning defendant received satisfied *Miranda*. Defendant was given a form at the outset that notified her the warnings were necessary "[b]efore any questions are asked of you." She then received, both on the form and verbally, advisement of an unqualified right to an attorney. Nothing was said that could have misled a reasonable person as to the scope of that right or suggested that it applied only at certain stages of the interrogation or judicial processes. Rather, a commonsense understanding of the warnings would lead one to believe that the right to an attorney could be invoked at any time.[15]

---

[14] See *Miranda*, 384 US at 469 (explaining that the Court's "aim" in requiring a warning about the right to counsel "is to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process"); *Adding (Or Reaffirming) A Temporal Element to the* Miranda *Warning*, 90 Marq L Rev at 1027 ("[T]he package of [*Miranda*] warnings is intended to convey to the suspect that he does not have to talk if he does not desire to. The attorney's presence is only a means to an end, not an end in itself" because it "safeguard[s] the suspect's right to remain silent.").

[15] I concede that the warnings here could have been more explicit. However, it is up to the policy-making branches to adopt or require best practices; courts may only determine which practices pass constitutional muster. See *Walton*, 199 Ill App 3d at 344-345 ("While the better practice would be for the police to make explicit that defendant's right to consult with a lawyer may be both before and during any police interrogation, we hold that the language used in this case [that the defendant had a right to consult with a lawyer] was sufficient to *imply* the right to counsel's presence during questioning" because "no

But even more important, to my mind, is that *Miranda* approved of FBI warnings no more detailed than the ones administered here and the Court has never required more since *Miranda*.[16] Thus, the Court of Appeals' decision below stands for the proposition that warnings like those approved in *Miranda* actually violate *Miranda*. Instead of second-guessing *Miranda*, I would take the Supreme Court at its word on whether this way of phrasing the warning is permissible.[17] Demanding anything more elaborate, as the Court of Appeals did here, exceeds what *Miranda* required and is therefore not an application but an extension of the case's holding.

In taking the narrower reading of *Miranda*, I am guided by first principles. I am not the first to notice that the rule crafted in *Miranda* lacks a discernable relationship to the actual text and original meaning of the Constitution.[18] Of course, Supreme Court caselaw

---

restrictions were stated by the police in the present case as to *how*, *when*, or *where* defendant might exercise his right 'to consult with a lawyer.' ").

[16] And it has passed on more than one opportunity to reverse courts that have upheld general warnings that contain partial or no express temporal components, including very recently. See *Carter v Colorado*, 583 US ___; 138 S Ct 980 (2018); *Warren v United States*, 564 US 1012 (2011).

[17] The Court of Appeals acknowledged the tension in *Miranda* produced by the discussion of the FBI warnings. *Mathews*, 324 Mich App at 437 n 7. Nonetheless, the Court of Appeals thought the statements concerning the FBI warnings mattered little because they were "immediately followed by a discussion of the then-current practices in" various other countries and military courts and came "in the larger context of responding to concerns" about the practical cost of the warnings. *Id*. The positioning of the discussion, however, does nothing to negate *Miranda*'s clear statements approving the FBI warnings, most notably that the FBI's "present pattern of warnings and respect for the rights of the individual . . . is consistent with the procedure which we delineate today." *Miranda*, 384 US at 483-484.

[18] See *Dickerson v United States*, 530 US 428, 448 (Scalia, J., dissenting) ("[T]he decision in *Miranda*, if read as an explication of what the Constitution *requires*, is preposterous."); Markman, Miranda v Arizona: *A Historical Perspective*, 24 Am Crim L Rev 193, 241 (1987) ("Perhaps more than any Supreme Court decision preceding it, *Miranda* found the Court straying from the moorings of both the Constitution and the traditionally conceived judicial role to craft detailed, code-like prescriptions governing criminal justice. The *Miranda* decision had no basis in history or precedent but reflected, rather, a departure from the authoritative sources of law."); see generally Amar, *The Constitution and Criminal Procedure: First Principles* (New Haven: Yale University Press, 1997), pp 48-49 ("Modern understandings of the [Fifth Amendment self-incrimination] clause deviate far from its early American implementation, from plain meaning, and from common sense.").

is binding and must be faithfully applied. *Abela v Gen Motors Corp*, 469 Mich 603, 606 (2004). But if a fair reading of the precedent does not resolve the issue we face, we have the power and the responsibility to decide the issue for ourselves. We are under no obligation to extend the scope of a precedent to cover the matter at hand, especially when, as here, the Supreme Court has already signaled its approval of the practice.

I would not extend a decision like *Miranda* unless the extension can be independently justified under the proper interpretive approach, that is, unless the extension is required by the Constitution's original meaning.[19] It is no easy task, however, to discern original meaning in an area where the caselaw has long since been uncoupled from that meaning. Here, for example, the interpretive endeavor required by *Miranda* revolves around a specific set of warnings promulgated by the Court. A judge's traditional tools of textual and historical inquiry mean little in this analytical framework. Does the text of the Fifth Amendment, as originally understood, require the conclusion that a person has been "compelled . . . to be a witness against himself" on the basis of statements he made without first being explicitly warned that he has a right to consult an attorney before and during custodial interrogation? Certainly, no one in this case has offered such an argument, and accordingly I will not assay an answer. Merely posing the question demonstrates the need for caution in this area.[20]

For these reasons, I would not extend *Miranda* to provide that preinterrogation warnings must expressly advise of the right to counsel before and during the questioning. It is enough that a suspect, like defendant here, be notified of her unqualified right to counsel.

---

[19] See Blackman, *Originalism and Stare Decisis in the Lower Courts*, 13 NYU J L & Liberty 44, 51 (2019) (arguing that originalist lower court judges "should only extend a Supreme Court precedent if the original meaning of the Constitution can support that extension"); cf. *Garza v Idaho*, 586 US ___, ___; 139 S Ct 738, 756 (2019) (Thomas, J., dissenting) (noting that the Court should "tread carefully before extending our precedents" when they do not reflect the Constitution's original meaning); *Free Enterprise Fund v Public Co Accounting Oversight Bd*, 383 US App DC 119, 150 (2008) (Kavanaugh, J., dissenting) ("We should resolve questions about the scope of . . . precedent[] in light of and in the direction of the constitutional text and constitutional history."), aff'd in part and rev'd in part 561 US 477 (2010).

[20] Absent an analysis of original meaning—either in *Miranda* itself or with regard to its extension—this Court is forced to consult *Miranda*'s text rather than the Constitution's text. Thus, even though the Court's comments on the FBI warnings could be cast off as unnecessary to the decision, they take on more significance since they are all we have to work with in this situation.

IV

In denying leave in this case, the Court declines to exercise the proper measure of circumspection that the issue requires and instead submits, without comment, to the Court of Appeals' extension of *Miranda* in a published opinion. I disagree that the warnings here were deficient under *Miranda*, and I would not extend that decision to prohibit these warnings. Accordingly, I believe the Court of Appeals' decision should be reversed, and I therefore respectfully dissent.

MARKMAN and ZAHRA, JJ., join the statement of VIVIANO, J.



b0609

I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 12, 2020



Clerk